UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HICHAM AZKOUR,

    Plaintiff,

v.

**Civil Action No. 10 CV 4132 (RJS) (KNF**

LITTLE REST TWELVE INC.
RESPONSE TO PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT

LITTLE REST TWELVE, INC. et.al

    Defendants.

(Little Rest Twelve Inc. is herein referred to as "LR12").

1. Azkour has filed a motion for summary judgment and attached several affidavits and a rule 56 statement for the purpose of affirmatively proving his case.

2. A thorough review of the entire record actually demonstrates that, as might be expected in a Labor action, just about every one of Azkour's substantive allegations involves a genuine issue of disputed material fact.

3. The entire action relies upon Azkour's self serving unreliable statements and fabrications, which are uncorroborated by record evidence.

4. In order to bootstrap Azkour's allegations Azkour has attached two inadmissible affidavits by Uzi Ben David and Nina Zajic.  Neither of these individuals has been subject to cross examination and or the reasons set forth below, they are inadmissible.

5. Like Azkour's own allegations the affidavits are uncorroborated by record evidence and are executed by persons whose motive, intent, and subjective feelings are in issue. As set forth in the accompanying memorandum of law, as such the Court may deny summary judgment if resolution of a factual issue requires evaluation of witness credibility or demeanor.

6. Azkour's claims fall into three basic categories 1). wage violations, 2). tip violations, 3). discrimination.

7. Azkour's alleged proof in light of LR12's record evidence in contravention fails to establish the absence of genuine issues of disputed material facts in each of these categories and determination of these issues will necessarily involve genuine issues of material fact.

Discrimination Claims

8. Azkour was hired by LR12 on or about October 10, 2009. Azkour's employment lasted a total of sixteen weeks, until Azkour resigned after being suspended with pay.  (see, LR12 letter of suspension with pay (exhibit "A"  ) and Azkour's resignation exhibit "B" )

9. While Azkour alleges that he applied for, and was hired for, a position as a waiter this is not true.  Azkour produces no evidence in support and the business and payroll records of LR12 unequivocally reflect that Azkour was a "busser and runner".
(see, Clock Payroll record exhibit hereto " C") and the deposition of Jessica Comperiati office manager (Azkour exhibit pgs. 35-36) and statement of Sergei Bezrukov (exhibit "D").

10. Azkour alleges that he complained to management and the department of Labor and that management either did nothing or retaliated against him. Determination of these issues will necessarily involve genuine issues of material fact.

11. In fact, Azkour alleges that he complained to manager Peter Eljastmi who ignored the complaints. This is false. Mr. Eljastimi gave a statement to LR12 human resources as part of LR12 investigations into Azkour's complaint (exhibit "E") The statement of Mr. Eljastimi directly contradicts Azkour's allegation.

12. Communications between LR12 Human Resources department and Azkour clearly demonstrate Azkour's complaints were taken seriously and properly investigated. (see, exhibit "F" January 15, 2010 HR letter) and January 25, 2010 HR letter, exhibit "G ").

13. The affidavits of employees Matthew LaFountain, Elina Golovko and Victor Chavez, who were employed at the same time as Azkour and worked with Azkour, reflect that they never saw any evidence of retaliation against Azkour or anyone else.

14. In particular the affidavit of LaFountain (exhibit "H") states that with regard to Azkour's complaints about diminished hours those were the result of diminished business and time of year rather than retaliation and that other employees were likewise affected. (see, also deposition of Jessica Conperiati (Azkour exhibit)

15. Azkour alleges that after he complained that he did not receive wages or tips, yet (exhibit "I " is a receipt signed by Azkour regarding payroll and Azkour's share of cash tips, which is six days after Azkour resigned.

16. Azkour alleges that he was discriminated against because Azkour has not been offered his job back. Amongst other things, perhaps the "incident report" dated 2/20/2010 will shed some light on the subject. (exhibit "J"). That report reflects that on 2/19/2010 Azkour showed up drunk at LR12 and that Azkour had to be physically escorted off the premises after uttering obscenities and expressing that

he wanted to "punch" and "beat" unidentified members of staff and management.

WAGE CLAIMS

17. Azkour alleges that he was not paid overtime compensation due to him.yet there is no record evidence to support this position. The payroll records of LR12 reflect otherwise. LR12 used a clock in system wherein employees were required to clock in and out. Those records reflect Azkour's hours and payments. The records reflect that Azkour was properly paid. At the very least the payroll records create a genuine issue of material fact with regard to Azkour' allegations.
(see, Clock Payroll record exhibit "C ").

18. Azkour's words and theories can not overcome the clock payroll records which speak for themselves so Azkour is forced to allege that those records were inaccurate and that he was forced to work off the clock. Yet Azkour offers no tangible proof. Again at the very least, determination of this issue involves a genuine issue of material fact. (see, Bezrukov affidavit "D ")

19. Azkour has nothing except his "recollection" to support his claims. (see, Azkour's memorandum of law page 4). Azkour has produced no evidence to show the amount and extent of that work as a matter of just and reasonable inference.

TIP CLAIM

20. Azkour was paid a portion of his wages in tips. Company policy and the method of sharing tips was quite clear and LR12 required tipped employees to acknowledge the tip sharing policy by executing an "Employee Waiver". (see, copies of employee waivers exhibit " K").

21. Nevertheless, Azkour alleges that LR12 itself does not know how tips were split, never shared this information with employees and never properly distributed tips. Certainly the "employee waivers"

refute Azkour's allegations and most certainly determination of this issue involves a genuine issue of material fact.

## AZKOUR'S AFFIDAVITS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### AZKOUR'S AFFIDAVIT

#### A. AZKOUR"S MENTAL INCAPACITY

22. At a July 11, 2011 conference before Magistrate Fox, Azkour held up a report and explained that the report declares that he has several mental disorders including post traumatic stress disorder. Azkour stated that as a result he is living in a mental health shelter.

23. In a July 20, 2011 letter to Magistrate Freeman in support of his second motion to intervene in the closed Class case, Azkour himself requests that the court "Order that I undergo a psychiatric evaluation".

Azkour himself bares his mental incompetency in paragraph 46 of his pro se se motion to intervene

> INTERVENOR, as a direct consequence of the above named
> parties' unlawful acts, has been suffering from,
> and has been recently diagnosed by Dr. YVONE WALDEMER,
> MD, with several mental health disorders, including
> Adjustment Disorder and Chronic Post Traumatic Stress
> Disorder.

24. In the affidavit of Sergei Bezrukov (Ex "D"), Bezrukov states that Azkour admitted to him that Azkour had initiated numerous cases, that since Azkour's separation from his wife that Azkour has been mentally unstable, and that (he) Azkour will do anything to get his way of life back.

## B. AZKOUR'S HISTORY OF SIMILAR CONDUCT

25. Azkour has done this before. He is both a professional victim and a professiona lplaintiff. Azkour was a panelist lecturer at a June 2008 program put on by the"American Arab Anti Discrimination Committee" wherein he was billed as "Hicham Azkour, Hate Crime Victim", and has filed frivolous cases across the country:

codce 2001-cv-00196

njdce 2005-cv-05633

njdce 2007-cv-05280

nysdce 2008-cv-06203

Appellate Cases

03cae 08-1020

03cae 08-3133

26. Nevertheless, when questioned at his deposition (exhibit "L") about prior cases, Azkour would admit to previously filing only one case, a Federal filing in New Jersey, and Azkour invoked his "fifth amendment privilege" with regard to the details. Azkour denied filing other cases and denied serving as a lecturer as a "hate crime victim".

27. In one New Jersey Federal Court action Azkour acting pro se, sued then US Attorney Chris Christie and FBI Special Agent in Charge Leslie G. Wiser, Jr. because they refused to prosecute supposed violations of Azkour's civil rights. The complaint, which was dismissed as frivolous, alleged in general terms that the defendants failed to consider multiple requests to process his complaint and proceed with an investigation as regards civil rights violations to which he had been subjected. Azkour had sought an "order enjoining Defendants to consider his meritorious complaint and initiate an investigation." In another, Azkour acting pro se sued the Hudson County Prosecutor's office and its

individual attorneys. Based on Azkour's conduct the case was dismissed by the District Court. Azkour acting pro se appealed to the Third Circuit Court of Appeals, which concluded that based upon Azkour's history, no sanction other than dismissal would be appropriate. The Court held in particular that it could not have imposed monetary sanctions on Azkour as he was proceeding in forma pauperis.

28. In addition, according to Azkour he has filed several additional pending unassigned cases with the pro se office regarding LR12 and the participants in this action, including the attorneys and persons who were not employed by LR12 during the relevant time period.

### C. ABSENCE OF RECORD EVIDENCE

29. Azkour's affidavit is not subject to cross examination and in the light most favorable to him creates numerous issues of material fact.

30. Azkour gave a 196 page deposition (Ex "L") during which he was closely examined as to evidentiary support for his allegations. As a result Azkour's attorney voluntarily abandoned approximately 150 allegations contained in the pro se complaint.

31. The crux of Azkour's case is Azkour's own unsupported repeated allegation that he worked more hours for which he was paid, that he was not paid overtime and that he was cheated out of tips. Nevertheless there is no record evidence except for Azkour's own statements.
On page 4 of Azkour's memorandum of law it states that:
> Although Mr. Azkour does not have an exact record of the hours he worked, he is entitled to rely on his recollection, due to Little Rest Twelve's failure to keep an accurate record of his hours worked.

32. LR12 has submitted a clock in breakdown of Azkour's hours (exhibit " C "). In contrast, Azkour has submitted nothing except his "recollection".

### UZI BEN DAVID

33. In order to boot strap his claims, in support of the motion for summary judgment, plaintiff has supplied an affidavit from Uzi Ben David. Ben David was employed by LR12 at the same time as Azkour.

34. The affidavit is directly contradicted by the declarations of other employees herein cited herein and in the light most favorable to Azkour might only create disputed issues of material fact if it were admissible.

35. Ben David's affidavit is unreliable because Ben David has his own ax to grind against LR12. It is believed that Ben David is a preparing to attempt to cash as a plaintiff in a new action.

36. Ben David's affidavit is not subject to cross examination and is inadmissible because Ben David was never listed as a potential witness and was never mentioned by Azkour during Azkour's deposition when he was questioned as to persons who witnessed any of Azkour's allegations.

37. In Azkour's 195 page deposition (Ex "L")  during which Azkour was examined at
length as to potential witnesses and persons who could corroborate his allegations and Ben David was never mentioned. In fact, the first mention of Ben David in this matter is the appearance of his affidavit.

### NINA ZAJIC

38. Nina Zajic acted as the president of LR12 and ran the day to day operations.
Zajic has been named as a defendant in this action by both the plaintiff and LR12. She is individually

liable by statute and Zajic's share of responsibility and liability must be determined by the finder of fact.

39. Zajic has not appeared in this action and by her affidavit Zajic attempts to argue her case without submitting to cross examination and the the jurisdiction of the court .Under the circumstances Zajic's affidavit is inadmissible.

40. Zajic was responsible for the conduct that gave rise to the "Reyes" class action referred to in this case and executed the settlement agreement in "Reyes" case no. 08cv02494 DCF individually and as president of LR12. The settlement agreement contained injunctive relief.

41. Zajic's outrageous conduct caused her physical removal by LR12 on or about March 31, 2010.

42.Zajic's conduct and her removal by LR12 caused LR12 to file suit in the commercial division of the New York Supreme Court against Zajic and the other individuals named in Azkour's complaint. (exhibit "M "). Paragraph no. 23 of the action states that:

> The Defendants, through their improper management of Buddha Bar NY subjected themselves to a costly lawsuit by employees of Buddha Bar NY over failure to timely and properly pay wages.

43. In determining the issues in the NY state action, Zajic's credibility was crucially at issue. In resolving the issues therein, Justice Fried issued a 45 page opinion. (exhibit"N ")  Beginning on page 17 Justice Fried specifically dealt with Zajic's credibility. Finally, on page 21 of that opinion Justice Fried concluded:

> "Accordingly, I reject all of Zajic's testimony in this hearing as unreliable".

44. The allegations in Zajic's affidavit in the instant action are controverted by the affidavits submitted by Elina Golovko (exhibit "O")  Victor Chavez (exhibit "P") , Matthew LaFountain (exhibit "H") and Sergei Berzrukov (exhibit "D"). These affidavits alone are sufficient to create genuine issues of material fact.

LR12 AFFIDAVITS IN CONTROVENTION OF MOTION FOR SUMMARY JUDGMENT

SERGEI BEZRUKOV (Sergei) (exhibit ("D ")

45. Sergei Bezrukov " was a manager at Buddha Bar. Sergei's affidavit in particular controverts the allegations made in the affidavits filed in support of the motion. Sergei's affidavit highlights the existence of genuine issues of material fact including but not limited to the issues of retaliation, improper adjustment of hours.

46. Perhaps most telling in Sergei's affidavit is Azkour's admission to Sergei that Azkour had initiated numerous cases, that since Azkour's separation from his wife that Azkour has been mentally unstable, and that Azkour will do anything to get his way of life back.

MATTHEW LAFOUNTAIN ("LaFountain") (exhibit " H ")

47. LaFountain's affidavit as do the others, controverts the allegations made in the affidavits filed in support of the motion. The affidavit highlights the existence of genuine issues of material fact including but not limited to the issue of retaliation by reduction of Azkour's hours . LaFountain states that:

> 7. Azkour complained about losing shifts to me at one point and I had pointed out that my shifts had been cut back too because of the seasonal nature of our employment and the profitable season was over and the shifts had to be shared.

### ELINA GOLOVKO ("Golovko") (exhibit "O ")

48. Golovko's affidavit as do the others, controverts the allegations made in the affidavits filed in support of the motion. The affidavit highlights the existence of genuine issues of material fact including but not limited to the issue of retaliation wherein Golovko presents valid reasons why Azkour's hours were reduced due to Azkour's misconduct and poor performance:

> 8. I observed erratic and aggressive behavior on Azkour's part including but not limited to constant arguments and threats of different nature to restaurant managers, insubordination at work and several times when he walked out during his shift without manager's knowledge and consent during the whole time period of his employment at LR12.

### VICTOR CHAVEZ ("Chavez") (exhibit "P ")

49. Chavez's affidavit as do the others, controverts the allegations made in the affidavits filed in support of the motion. The affidavit highlights the existence of genuine issues of material fact including but not limited to the issue of Azkour's conduct:

> 5. Hicham always tried to get some staff together to make a lawsuit against LR12.
>
> 6. Azkour talked bad about the company to all staff.
>
> 7. I never witnessed or encountered any retaliation against, or mistreatment of, Azkour or any other employee, including myself.

## CONCLUSION

Based upon the foregoing, there is no admissible record evidence to suuport the motion for for Summary Judgment and the record evidence creates numerous genuine issues of material fact. Thusly, the Motion for Summary Judgment should be denied.

Dated: September 6, 2011
     New York, New York

                                        *S. Skip Taylor*

                                        _____
S. Skip Taylor
Attorney for LR12
1521 Alton Road #661
Miami Beach, Florida 33139
305.321.1455