Hon. Richard J. Sullivan, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

HICHAM AZKOUR
127 W. 25th Street
New York, New York 10001


Email: hicham.azkour@gmail.com


February 7, 2013


HAND DELIVERED


Re:  *Azkour v. Little Rest Twelve, Inc., et al.,*
     Civil Action No. 10-civ-4132 (RJS)(KNF)

     *Azkour v. Jean-Yves Haouzi, et al.,*
     Civil Action No. 11-civ-5780 (RJS)(KNF)

[USDC SDNY DOCUMENT ELECTRONICALLY FILED DOC #: ___ DATE FILED: 2/7/13]

Dear Judge Sullivan:

I am the plaintiff in the above-referenced matters and, on December 28, 2012, I urged the Court to ascertain my damages in the matter *Azkour v. Little Rest Twelve, Inc., et al.,* 10-civ-4132 (RJS)(KNF) ("FLSA Action"). On the same day, instead, the Court responded to my request by issuing an Order of Judgment with respect to my former attorney's fees only. *See* FLSA Action Docket Entry No. 145. Curiously, the Court stated in the aforementioned Order that the FLSA Action "remains ongoing *only* for the limited purpose of ascertaining damages". This *only* makes more than four months now.

As asserted in my previous letter to the Court, I do not understand why the simple operation of ascertaining damages should be unnecessarily and, perhaps, indefinitely delayed.

In disposing promptly of the FLSA Action, efficiently, and fairly, this Court will not but only demonstrate due regard for the rights of the parties to be heard and to have issues resolved without unnecessary cost or delay. This Court should reduce and eliminate the dilatory practices, avoidable delays, and unnecessary costs of which I

have been complaining since the initiation of the above-referenced matters. Prompt disposition of the Court's business requires the litigants and their lawyers cooperate with the judge to that end. To this day, I have cooperated with the Court to the sad extent of being unfairly sanctioned and falsely accused of anti-Semitism, which was the cause of much hilarity. Actually, I am a Semite myself, that is a descendant and follower of Abraham, who was a descendant of Shem, son of Noah, through Arpachshad.

Anyway, in my letter to the Court, dated December 28, 2012, I informed and reiterated to Your Honor that I am not seeking settlement with the defendants anymore. This Court knows that a judge may encourage and seek to facilitate settlement but should not act *in a manner*[1] that coerces any party into surrendering the right to have the controversy resolved by the courts. In the FLSA Action, the Court and the Court *only* must resolve damages, not the defendants... or time, for that matter.

Moreover, I have no intention to settle and abandon my discrimination claims against the defendants in *Azkour v. Jean-Yves Haouzi, et al.*, 11-civ-5780 (RJS)(KNF) ("*Haouzi* Action"), regardless of the amounts of damages determined by the Court in the FLSA Action. I already presented my legal argument supporting the fact that disposition of the *Haouzi* Action will not affect, in any way or fashion, Your Honor's decision in the FLSA Action, essentially because the causes of action in both matters do not arise under the same legal framework, the respective damages remain distinct, and their computation cannot be but determined under their distinctly respective sets of laws.

Considering the Court's unnecessary delay to ascertain my damages in the FLSA Action and the late decision of the Hon. Kevin N. Fox in the *Haouzi* Action, *see Haouzi* Action Docket Entry No. 99, it has become certainly clear that both this Court and Judge Fox view the *Haouzi* Action as superfluous, frivolous, perhaps a sort of harassment and, for this very reason, this action should be eliminated regardless of the viability of its underlying legal claims. With all due respect, I do not agree with this view because whereas the wrongful acts of which I complained in the FLSA Action were committed by the former management of defendant Little Rest Twelve, Inc., the egregiously unlawful acts complained of in the *Haouzi* Action were caused by and occurred under the present management. In other words, the parties responsible for

---

[1] Unnecessary, harmful delay could prove to be one of these manners.

the wrongdoings are not the same in both actions. They are distinct and, in *Haouzi* particularly, they are being sued in both their individual and corporate capacities.

As this Court is well aware, I am not a confrontational individual and, as such, I preferably tend to avoid any speculatively unfair or improper reaction to this Court's decisions, no matter how frustrating and disappointing they may be sometimes. However, arbitrarily terminating 3 pleadings, which I had filed in response and in opposition to the defendants' motion to dismiss, does not lead me to anything but to conclude that such termination's motive is rather a deterring action to end my assertiveness as regards my discrimination claims. As of this day, I remain bewildered and unable to comprehend the true, legal reasons for which the Hon. Fox terminated my *Notice of Motion for Judgment on the Pleadings* (*Haouzi* Action Docket Entry No. 91), *Notice for Voluntary Partial Dismissal and Request for Leave to Amend the Third Amended Complaint* (*Haouzi* Action Docket Entry No. 92), and *Request for a Stay Pending the Outcome of the FLSA Action* (*Haouzi* Action Docket Entry No. 93).

The Court may note that the above-mentioned pleadings docketed as Nos. 91 and 92 are definitely not motions. These are simply notices. Therefore, they do not require any permission to be filed because they are essentially requests for permission. On the other hand, the pleading docketed as No. 93 *may be considered* as a motion – although it is not in compliance with Local Civil Rule 7.1 - and, in accordance with Judge Fox's directive of May 1, 2012, does not explicitly requires his Honor's authorization to be filed. The Court is reminded that, on October 17, 2012, the defendants requested permission to file a motion to dismiss my Third Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Their request was unquestionably granted on October 26, 2012, despite their first and failed motion to dismiss my Second Amended Complaint. *See Haouzi* Action Docket Entry No. 89. While granting their request, Judge Fox Ordered that I serve and file my response to the defendants' motion to dismiss on or before November 30, 2012. On November 12, 2012, counsel for the defendants requested, as part of his dilatory protocol, another time extension to file the above-mentioned motion to dismiss. On November 16, 2012, Judge Fox unquestionably granted the extension and Ordered that I file a response to the defendants' motion on or before December 17, 2012. *See Haouzi* Action Docket Entry No. 94.

At no time during the elapsed time between the filing of the so-called motions (Nos. 91, 92, and 93) on or about November 5, 2012 and the day I filed my response

exactly as Ordered by Judge Fox, that is December 7, 2012, did Judge Fox address my pleadings or decide that they were filed without His Honor's permission. Considering these circumstances and the timing of the Order, it is now indubitable that Judge Fox did not reach his decision to terminate my pleadings until he was provided with the evidence that the defendants have been discriminating against me. In fact, after review of my 105-page response and opposition to the defendants' motion to dismiss, Judge Fox came close to the conclusion that no court could ignore that I am prevailing on my discrimination claims based upon the pleadings and that entertaining my so-called motions would make my damages *exorbitant* – but the law want them to be so in this instance.

Although this Court has never interfered with a plaintiff's voluntary dismissal of his or her claims, Judge Fox seems to be a bit – just a little bit maybe - bothered by my partial voluntary dismissal, which was filed on November 5, 2012. *See Haouzi* Action <u>Docket Entry No. 92.</u> Whereas I made the little effort to support my claims in the Fifth Amended Complaint – a product of my partial voluntary dismissal - with the relative laws and regulations governing the ADA, Judge Fox seems to believe that this move is just a shield from dismissal. Perhaps, as this Court opined: "Rule 15(a) is not a shield against dismissal to be invoked as either a makeweight or a fallback position in response to a dispositive motion." *DeBlasio v. Merrill Lynch & Co., Inc.*, No. 07 Civ. 318(RJS), 2009 WL 2242605, at *41 (S.D.N.Y. July 27, 2009). Not a bit in my case, because all my claims in the *proposed*[2] – and I say *proposed* - Fifth Amended Complaint are based upon coherently truthful allegations, which are proved by the defendants' own conduct and admissions in their pleadings. *See Haouzi* Action <u>Docket Entry No. 97</u>; and particularly FLSA Action <u>Docket Entry No. 139.</u>

It is true that where allegations in the complaint conflict, or where a plaintiff's own pleadings are contradicted by other matter relied upon in drafting the complaint or incorporated into the complaint by reference, the Court "is not obliged to reconcile plaintiff's own pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005); *DeBlasio*, 2009 WL 2242605, at

---

[2] Some courts in this District have required a plaintiff to file a copy of the proposed amended pleading in order to demonstrate that Rule 15(a) relief is appropriate. *See, e.g., In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677(NRB), 2007 WL 2589482, at *4 (S.D.N.Y. Sept. 8, 2007). At the very least, a party seeking leave to amend must provide some indication of the substance of the contemplated amendment in order to allow the Court to apply the standards governing Rule 15(a). *See, e.g., Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir.2004).

*26 (citing *Koulkina v. City of New York*, No. 06 Civ. 11357(SHS), 2009 WL 210727, at *6 (S.D.N.Y. Jan. 29, 2009)) (observing that where allegations within a complaint tend to contradict each other, courts need not accept the allegations as true).

As it has been previously decided by this very Court, *see, e.g.*, *St. Clair Shores Gen. Employees Ret. Sys. v. Eibeler*, 745 F. Supp. 2d 303, 313 n.10 (S.D.N.Y. 2010), "an amendment is not warranted '[a]bsent some indication as to what [the plaintiffs] might add to their complaint in order to make it viable,' the District Court was under no obligation to provide the [plaintiffs] with leave to amend their complaint." (quoting *Nat'l Union of Hosp. & Health Care Emp., RWDSU, AFL-CIO v. Carey*, 557 F.2d 278, 282 (2d Cir.1977))); *Shields v. Citytrust Bancorp*, 25 F.3d 1124, 1132 (2d Cir. 1994).

This Court must not question the defendants' discriminatory practices because discrimination occurred under Your Honor's watch. No judge will ever accept or tolerate that, in his or her presence, a licensed attorney call a pro se plaintiff a *Koran-quoting lunatic* in an official, non-ex parte communication with the Court. Condoning such offensive, unethical behavior by an attorney does not create but an appearance of impropriety because any reasonable mind, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that impartiality is impaired.

*Now, the Court's task is rather to determine damages according to the laws and impose the harshest punitive damages possibly available to this Court.*

The defendants' argument, since I have filed my complaints, is just a mummy's inscrutable, lugubrious reconstitution of an evil sorcery scene to camouflage a lie – a big lie. "You know I hate, detest, and can't bear a lie, not because I am straighter than the rest of us, but simply because it appalls me. There is a taint of death, a flavor of mortality in lies, — which is exactly what I hate and detest in the world — what I want to forget. It makes me miserable and sick, like biting something rotten would do. Temperament, I suppose."

The Court may not be fully aware of my living conditions in a shelter infested with drugs and criminals – a kingdom of horror and insanity. But let me be clear and state that my life and safety is at stake now. I need not explain to the Court what may happen next and what my damages would look like if I am murdered or seriously injured in a shelter run by the City of New York's corrupt contractors. My situation

cannot but tend to be more complicated because of a failed police and dysfunctional city, where I realized that I am not protected. To my present legal entanglements may join additional ones. Justice, therefore, requires that this Court end the taxpayer money's waste for which I am not responsible by ascertaining my damages and punishing the defendants who have been interfering with my search for employment. *See* **EXHIBIT A**, **EXHIBIT B**, and **EXHIBIT C.**

Again, we respectfully urge the Court to dispose of the FLSA Action by ascertaining my damages, not the attorneys' damages.

Respectfully submitted,

_____
HICHAM AZKOUR, pro se

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true and correct copy of the foregoing LETTER TO THE HON. RICHARD J. SULLIVAN DATED FEBRUARY 7, 2013, has been served upon the defendants' attorney of record on this 7th day of February 2013, VIA MAIL:

Andrew S. Hoffmann, Esq.

450 Seventh Avenue, Suite 1400

New York, New York 10123

Dated: February 7th, 2013

By:        HICHAM AZKOUR, pro se

*[signature]*

                          HICHAM AZKOUR
                          127 W. 25th Street
                          New York, New York 10001

                          Email: hicham.azkour@gmail.com

# EXHIBIT A

**INCIDENT INFORMATION SLIP**
PD 301-164 (Rev. 1-97)

Date: 1/26/13

Welcome to  13th Precinct         230 East 21 Street NY NY 10010        (212) 477-7416/ 7417
            (Command)              (Address)                            (Telephone No.)

We hope that your business with us was handled satisfactorily. Your particular matter has been assigned the following number

Complaint Report No.: _____   Accident Report No.: _____   Aided Report No.: _____

Reported to: P.O. Perez   27093   Date of Occurrence: 1/26/13  Time: 1500
             (Rank) (Name)  (Shield No.)

Location of Occurrence:  127 W 25 St

Crime:  Harassment

Please keep this report should you have to refer to this matter in the future. If you need any further assisstance feel free to contact us at telephone number (212) 477-7416/ 7417. Please let us know if you have any suggestions on how we c better serve you. As you may already know, we will provide you with a crime prevention survey of your residence or business. Please ask for more information on this and other crime prevention initiatives. Our goal is to make you and your property safe.

## COURTESY — PROFESSIONALISM — RESPECT

## REMEMBER: CALL "911" FOR EMERGENCIES ONLY!!!!

# EXHIBIT B



**BRC**

HOPE. HEALTH. HOME.

HRA
Waverly Job Center
12 West 14th Street
New York, NY 10035

February 4, 2013

Dear HRA,

This is to confirm Hicham Azkour was referred by HRA to our outpatient program for intensive treatment. He was seen and admitted on December 21, 2012 based on the mandate and recommendation by HRA. He has reported to us that he has never used drugs and that he last drank alcohol in 2005. He denies any current desire or urge to drink. He completed Narco Freedom outpatient program in September 2012. We have been doing a daily breathalyzer on him and all of them have been negative. We spoke to his Shelter, The BRC Jack Ryan Residence and they report that he has not been involved in any drug or alcohol use there. At this time we are recommending that he is not in need of drug and alcohol treatment. We would like to close his case here as Treatment Not Needed unless you have information about recent use or risk of relapse that we are unaware of. We do recommend that he continue with his Mental Health program that he is already enrolled with at Post Graduate Center.

Thank you for your assistance and if you have any questions, please contact Mary Todisco, Counselor or myself at the number below.

Thank you,

Murray Edwards, MA, LMHC, CASAC
Program Director

# EXHIBIT C

Report Number WINRO146 / WINRO154 (Rev. 11/12)


**NYC** Human Resources Administration Department of Social Services | Family Independence Administration

Date: 01/15/2013
Case Number: 00000666166E
Case Name: AZKOUR HICHAM
General Phone Number: (212) 620-9854

## BUDGET LETTER REQUEST

Enclosed, please find the budget letter that you recently requested. As of August 29, 2012, any reference to the Food Stamp Program in this notice shall mean the Supplemental Nutrition Assistance Program (SNAP) and any reference to Food Stamp benefits or Food Stamps (FS) shall mean SNAP benefits.

### Contact Information:

| | | | | |
|---|---|---|---|---|
| Head of Household: | HICHAM AZKOUR | | | |
| Home Address: | 127 W 25TH ST | NEW YORK | NY | 10001-0000 |
| Mailing Address: | | | | |
| Phone Number: | (212) 293-6709 | Email Address: | | |

### Legend

| | | |
|---|---|---|
| AP= Applying | SI = Single Issue | CA= Cash Assistance |
| AC= Active | CL/RJ= Not Active | MA= Medicaid |
| SN= Sanctioned | NA= Not Applying | SNAP= Supplemental Nutrition Assistance Program Benefits |

### Household Members:

| First Name | Last Name | Sex | Date of Birth | Relationship | CA Status | MA Status | SNAP Status |
|---|---|---|---|---|---|---|---|
| HICHAM | AZKOUR | M | 07/03/1965 | Applicant/Payee | AC | AC | AC |

| | | | | |
|---|---|---|---|---|
| Report Number: WINRO146 (Rev. 11/12) | **SEMI-MONTHLY CASH ASSISTANCE BUDGET CALCULATION** | | | Report Date: 01/15/2013 |
| Effective Date of Budget: 01/A/13 | Local Office: 013 | Worker: 00013 | | Case Name: AZKOUR HICHAM |
| Case Number: 00000666166E | Suffix: 1 | Number in CA H/H: 01 | | Number in Suffix: 01 |

| NEEDS | | EARNED INCOME | | |
|---|---|---|---|---|
| RESTR | 185% TEST & POVERTY LEVEL TEST AMOUNT | D. GROSS | $0.00 | |
| | | | ACTUAL | ALLOWED |
| PRE ADDED ALLOWANCE | $79.00 | | | |
| 1. SHELTER | $0.00 | STANDARD DEDUCTION | $0.00 | $0.00 |
| ENERGY | $7.05 | 50 % DEDUCTION | $0.00 | $0.00 |
| ENERGY SUPPLEMENT | $5.50 | CHILD CARE | $0.00 | $0.00 |
| WATER | $0.00 | $ 15 EXEMPTION | $0.00 | $0.00 |
| FUEL | $0.00 | 1/3 EXEMPTION | $0.00 | $0.00 |
| PREGNANCY ALLOWANCE | $0.00 | OTHER DEDUCTION (INCLUDES PRORATA REDUCTION AMT) | $0.00 | $0.00 |
| HOME DELIVERED MEALS | $0.00 | | | |
| RESTAURANT ALLOWANCE | $32.00 | E. TOTAL DEDUCTIONS | | $0.00 |
| OTHER NEEDS | $0.00 | F. NET EARNED INCOME | | $0.00 |
| A. TOTAL NEEDS FOR 185% TEST | $123.55 | UNEARNED INCOME | | |
| 185% X TOTAL NEEDS | $228.57 | SOURCE | | AMOUNT |
| TOTAL EARNED + UNEARNED FOR 185% TEST | $0.00 | | | $0.00 |
| | | | | $0.00 |
| POVERTY LEVEL TEST | $465.42 | | | $0.00 |
| TOTAL INCOME FOR POVERTY LEVEL TEST | $0.00 | G. TOTAL UNEARNED INCOME | | $0.00 |
| | | UNEARNED INCOME DEDUCTION (INCLUDES PRORATA REDUCTION AMT) | | $0.00 |
| NEEDS REDUCTION DUE TO IVD SANCTION | $0.00 | H. NET UNEARNED INCOME | | $0.00 |
| B. TOTAL NEEDS FOR NET INCOME TEST | $123.50 | I. TOTAL INCOME (F + H) | | $0.00 |
| NEEDS REDUCTION DUE TO PRORATA SANCTION | $0.00 | | | |
| | | **CASH ASSISTANCE GRANT CALCULATION** | | |
| C. TOTAL NEEDS FOR BUDGET DEFICIT CALCULATION | $123.50 | C. TOTAL NEEDS | | $123.50 |
| **OTHER ALLOWANCES** | | I. TOTAL INCOME | | $0.00 |
| REFRIGERATOR RENTAL ALLOWANCE | $0.00 | J. BUDGET DEFICIT | | $123.50 |
| | | RECOUPMENT AMOUNT | | $0.00 |
| | | SEMI-MONTHLY CASH ASSISTANCE GRANT | | $123.50 |
| BUDGET NUMBER 1 | | NOTE: AMOUNTS SHOWN IN ITEMS (A) AND (J) ABOVE HAVE BEEN ROUNDED DOWN. | | |

Report Number: WINRO154 (Rev. 11/12)  **SNAP BUDGET CALCULATION FOR CA & CA-SSI CASES**  Report Date: 01/15/2013

Case Number: 00000666166E    Local Office: 013    Number in Case: 01    Worker: 00013
Case Name: AZKOUR HICHAM    Effective Date of Budget: 01/A/13

## BUDGET CALCULATION

**A.** INCOME

| | | | |
|---|---|---|---|
| 1. SEMI-MONTHLY GROSS EARNED INCOME | $0.00 | **E.** SHELTER COSTS | |
| 2. NET S / M INCOME FROM BOARDER/LODGER | $0.00 | 20. S / M ACTUAL RENT OR MORTGAGE BILLED TO HOUSEHOLD | $0.00 |
| 3. TOTAL S/M INCOME (LINE 1 + 2) | $0.00 | 21. S / M COMBINED UTILITY/PHONE STANDARD | $0.00 |
| 4. S / M CASH ASSISTANCE GRANT | $123.50 | 22. S / M COMBINED HEAT/UTILITY/PHONE STANDARD | $0.00 |
| 5. TOTAL S/M PA RECOUPMENT | $0.00 | 23. S / M PHONE STANDARD | $0.00 |
| 6. NET S/M CASH ASSISTANCE GRANT (LINE 4 MINUS 5) | $123.50 | 24. OTHER S / M SHELTER EXPENSE, REAL ESTATE TAXES, INSURANCE, INSTALLATION OF UTILITIES, ETC | $0.00 |
| 7. GROSS S/M OTHER UNEARNED INCOME | $0.00 | 25. LINES 20 + 21 + 22 + 23 + 24    E. | $0.00 |
| 8. TOTAL S/M UNEARNED INCOME (LINES 6 + 7) | $123.50 | **F.** EXCESS SHELTER DEDUCTIONS | |
| 9. S / M GROUP HOME EXCLUSION | $0.00 | 26. TOTAL SHELTER COST, E | $0.00 |
| 10. S / M CHILD SUPPORT EXCLUSION | $0.00 | 27. 1/2 OF ADJUSTED INCOME, D | ($11.25) |
| 11. LINES 3 + 8 , LESS LINES 9 + 10    A. | $123.50 | 28. EXCESS SHELTER COSTS. (LINES 26 MINUS 27) IF 26 IS LESS THAN 27, ZERO WILL APPEAR | $11.25 |
| **B.** 130% STANDARD SEMI-MONTHLY    B. | $605.50 | 29. MAXIMUM SHELTER DEDUCTION FOR AGED / DISABLED, AMOUNT FROM LINE 28. FOR ALL OTHERS, ACTUAL OR STANDARD, 229.50, WHICHEVER IS LESS.    F. | $0.00 |
| **C.** DEDUCTIONS | | **G.** SEMI-MONTHLY SNAP NET INCOME | |
| 12  20% OF LINE 3 | $0.00 | 30. D, ADJUSTED INCOME | ($22.50) |
| 13  STANDARD DEDUCTION | $74.50 | 31. F, EXCESS SHELTER DEDUCTION | $0.00 |
| 14. ALLOWABLE SEMI-MONTHLY CHILD-CARE / DEPENDENT CARE COSTS | $0.00 | 32. S / M NET SNAP INCOME. (LINE 30 MINUS 31)    G. | $0.00 |
| 15  ALLOWABLE S / M MEDICAL DEDUCTIONS | $0.00 | | |
| 16  CHILD SUPPORT DEDUCTIONS | $0.00 | **H.** MONTHLY SNAP NET INCOME | |
| 17  HOMELESS SHELTER DEDUCTION | $71.50 | 33. MULTIPLY AMOUNT IN 32 X 2    H. | $0.00 |
| 18  LINES 12 + 13 + 14 + 15 + 16 + 17    C. | $146.00 | **I.** BENEFIT ENTITLEMENT | |
| | | 34. BENEFIT | $200.00 |
| **D.** ADJUSTED INCOME | | 35. MONTHLY SNAP RECOUPMENT | $0.00 |
| 19  A MINUS C    D. | ($22.50) | 36. ADJUSTED BENEFIT AMOUNT. (LINE 34 MINUS 35)    I. | $200.00 |
| BUDGET NUMBER: 1 | | FEDERAL SNAP : $200.00    STATE SNAP: $0.00 | |