The Hon. Richard J. Sullivan, U.S.D.J.  
Thurgood Marshall  
United States Courthouse,  
Room 905  
40 Foley Square  
New York, NY 10007

HICHAM AZKOUR  
93 Pitt Street,  
Apt. No. 3B  
New York, NY 10002

Email: hicham.azkour@gmail.com

April 30, 2014



**Via ECF**

Re:   *Azkour v. Little Rest Twelve, Inc.*, <u>10-cv-4132 (RJS)(KNF)</u>

**Opposition to Defendant's request to modify the pre-trial Scheduling Order and extend the discovery completion deadline.**

Dear Judge Sullivan:

    The present letter is not a reply to Defendant's "response" to Plaintiff's motion for reconsideration. See <u>Docket Entries No. 193 and 196</u>. A reply will be timely filed.

    On April 25, 2014, Defendant's counsel emailed this Court requesting that Plaintiff be compelled to disclose his mental health records, including those sealed by the Court at <u>Docket Entry No.138</u>. Defendant's letter is construed as a request to extend the discovery deadline, albeit discovery was completed by July 31, 2011, almost 3 years ago.

    On April 17, 2014, the Court stated that it would not further extend the discovery completion deadline. The Court has not yet posted the conference's transcript for Defendant's counsel to review such a decision. Shockingly, while Defendant refuses to provide discovery material in the related matter *Azkour v. Haouzi, et al.*, <u>11-cv-5780 (RJS)(KNF)</u> ("Civil Rights Action"), it now exhibits enough boldness as to request that this Court extend the deadline and, thus, differentially, arbitrarily grant a privilege

1

Assuming that Defendant's April 25, 2014 is a *response* to Plaintiff's motion for reconsideration, there is no evidence that Defendant addressed the issue as directed by this Court.

Does Plaintiff's purported or alleged mental health illness is an impediment to his ability, availability to search for alternative, comparable employment and work?

Except for its blind reliance on Plaintiff's request to have the Court appoint a guardian ad litem[1] to represent his interests in the Civil Rights Action, which was justly denied for the reasons set forth at Civil Rights Action Docket Entry No. 86, Defendant willfully misrepresents and mischaracterizes Plaintiff's statements in his declaration that some nurses "diagnosed" him with a multitude of disorders, *see* Docket Entry No. 194 at ¶¶ 7-8, 14. Defendant deliberately ignores that Plaintiff, for example, has never been examined by a New York State qualified psychiatrist. *Id.* at ¶¶ 10, 13, and 15. Defendant also ignores that the nurses who diagnosed or, rather negligently and incompetently misdiagnosed him, issued absurd reports where they do not state whether Plaintiff is able to work. *Id.* at ¶ 9.

Curiously, while Defendant is convinced and asserts in its pleadings that Plaintiff is mentally disabled, incompetent and has been suffering, even prior to September 7, 2011, from mental illnesses such as Delusional Disorder, Schizoaffective Disorder, Post Traumatic Stress Disorder, and Major Depressive Disorder, its counsel, nonetheless, deposed Plaintiff on November 26, 2014 in the Civil Rights Action. Such proceeding was entirely recorded by Plaintiff with the authorization of the Honorable Kevin N. Fox, U.S.M.J. The audio recording reflects that Plaintiff did not engage in any behavior, speech, or thinking process that is typically attributable to and characteristic of mentally ill adult individuals. The audio recording reflects that Plaintiff coherently and calmly answered counsel's questions. As the recording reveals, Counsel was yelling, shouting, grumbling in discontent, banging on the table, and interminably repeating the same questions to Plaintiff. When the latter provided him with the same answers for the same questions he posed, Counsel's mood and tone used to change so dramatically as to reflect a "disturbance in behavior, feeling, thinking, or judgment", *see* Section 1.03(20) of the

---

[1] It has never been heard that an incompetent, adult individual *voluntarily and knowingly* requested from the courts to appoint a guardian ad litem to represent his or her interests. This may give some thought to the Court as to why Plaintiff requested the appointment of a guardian ad litem.

New York Mental Hygiene Law ("N.Y.M.H.L."), to such an extent that Plaintiff started doubting counsel's ability to complete the deposition. At one time, counsel's irascibility became so disruptive that he requested the transcriber to stop transcribing and went outside for an extended period of time.

Plaintiff may provide the Court, if requested, with a crystal-clear, digital copy of the recording and respectfully requests that it be introduced as evidence during trial.

The very fact of deposing Plaintiff, while alleging that he is a dangerous, mentally ill individual, who may pose a risk of harm to counsel and/or to himself, automatically gives rise to either one of the following concerns: (1) Defendant's counsel lacks the required sound judgment and mental capacity for an attorney to perform his duty; (2) Counsel was unethically unfair to and taking advantage over an unrepresented individual of diminished mental capacity; (3) Counsel has not been truthful in representing to the Court a matter that he knows to be false; (4) Counsel knowingly asserts material factual statements that are false; and (5) Counsel's conduct has no reasonable purpose other than to delay or prolong the resolution of the instant matter and serves merely to harass or maliciously injure Plaintiff.

Notwithstanding the fact that Plaintiff presented competent evidence supporting that, at all relevant times, he was available and able to work, Defendant avoids addressing such evidence altogether. If Defendant determines that such evidence is doubtful or inadmissible, we suggest that it subpoena and compel the testimony of representatives and mental health practitioners from the New York State Office of Temporary and Disability Assistance ("OTDA"). We also suggest that Defendant subpoena and compel the testimony of unemployment compensation representatives from both the New York State Department of Labor ("N.Y.S.D.O.L.") and the United States Department of Labor ("DOL"). These entities will testify as to whether Plaintiff's alleged mental illness, since his assignment by the New York City Department of Homeless Services ("DHS") to the shelters owned, operated, and managed by the Bowery Residents' Committee, Inc. ("BRC"), has actually prevented him from searching for employment and being available and able to work.

In addition, if Defendant believes that Plaintiff has been collecting unemployment compensation benefits despite his disability due to mental illness, the Court should readily consider such act as a fraud, a crime, and refer it to the U.S. Attorney for the Southern District of New York, DOL, and N.Y.S.D.O.L. for investigation and prosecution.

Plaintiff intends to subpoena representatives from the aforementioned agencies to testify during trial. He will timely identify such representatives and will request that the Court direct the U.S. Marshals Service to serve subpoenas upon them. Evidently, Defendant is liable for the costs and fees relative to the service of process. If it is required that Defendant advance such costs and fees prior to the service, Plaintiff will respectfully request that the Court direct Defendant's attorney to tender the amount corresponding to such costs and fees.

As indicated by Defendant's aforementioned letter, in addition to the psychiatric evaluations sealed by this Court and of which Defendant, on or about October 12, 2012, received a copy as part of the pleadings at <u>Docket Entries No. 134, 135, and 137</u>, Defendant's counsel appears to also have knowledge of Plaintiff's additionally alleged mental impairments, including Delusional Disorder and Schizoaffective Disorder[2]. Moreover, counsel appears to have been aware of and alert to Plaintiff's alleged mental impairments as he addressed the Court, in a letter dated October 12, 2012, and requested that Plaintiff be the subject of a psychiatric evaluation as a condition to his reinstatement. *See* <u>Docket Entry No. 139.</u>

This Court could have Ordered Plaintiff's psychiatric examination by "a suitably licensed or certified examiner"[3] pursuant to Rule 35 of the Federal Rules of Civil Procedure. At the time of Defendant's request, the Court already determined that Plaintiff had prevailed in the instant

---

[2] Evidently, counsel relies on Plaintiff's declaration at <u>Docket Entry No. 194</u>, ¶ 8, to contend that Plaintiff suffers from these psychotic impairments. However, there is nothing in Plaintiff's declaration which suggests that such diagnosis is correct and, therefore, is not a misdiagnosis as the result of negligence and incompetence. Plaintiff declares that all diagnoses were not the result of a *direct* examination by a qualified psychiatric pursuant to the definition provided by Section 9.01 of the New York Mental Hygiene Law. *See* <u>Docket Entry No. 194</u> at ¶ 10. These mental impairments are based on misdiagnoses by the BRC nurses. They are not supported by any affidavit or a competent psychiatric evaluation signed by a qualified psychiatrist. This is the reason why Plaintiff has brought an action against the Bowery Residents Committee, Inc. *See* <u>Docket Entry No. 25</u> in *Azkour v. Bowery Residents Committee, Inc., et al.*, 1:13-cv-05878-TPG. On February 26, 2013, Plaintiff appeared before the Honorable Thomas P. Griesa, U.S.D.J. and the latter, apparently, was not convinced that Plaintiff suffers from these disorders.

[3] As defined by Section 9.01 of the New York Mental Hygiene Law.

4

matter and, therefore, any costs related to the psychiatric examination should be paid by Defendant. The Court declined to do so.

Needless to say, counsel to Defendant also received, on or about January 13, 2012, Plaintiff's psychiatric reports. *See* <u>EXHIBIT A.</u> Therefore, Defendant's HIPAA request is just another vexatious attempt to delay trial and harass Plaintiff.

In opposition to what Defendant falsely and fraudulently alleges, Plaintiff has never been admitted to a psychiatric hospital, in New York or elsewhere, *whether voluntarily or involuntarily*, *see* Article 9, N.Y.M.H.L., has never been examined by a qualified[4] psychiatrist, and any psychiatric evaluation that has been produced, signed by a psychiatrist, and furnished to this Court is not based upon any *direct examination* of Plaintiff and, thus, does not meet the standards set by The American Board of Psychiatry and Neurology. As a matter of fact, one of the evaluations furnished to this Court is of psychiatrist who, albeit clinically active, is not certified by ABPN and does not satisfy the Maintenance of Certification Requirements. *See* <u>EXHIBIT B.</u>

Defendant's counsel has been asserting a falsehood to this Court, whether during the April 17, 2014 conference or in his letter, when he unequivocally represents that Plaintiff was admitted to and stayed at the *Bellevue Hospital Center* for a six-month rehabilitation program. If the Court reviews Plaintiff's declaration at <u>Docket Entry No. 194</u>, ¶ 6, it is clear that Plaintiff has never been admitted to an *in-patient*, *six-month* rehabilitation program.

During that time, Plaintiff was not restrained; his freedom was not curtailed by any alleged psychiatric treatment. He was able to walk out of the shelter at the times prescribed by DHS regulations. He was able to actively search for employment, conduct employment interviews, report to N.Y.S.D.O.L., claim and electronically certify his weekly unemployment compensation benefits. He was able to meet with former counsel in his office. He was able to intervene and file pleadings in *Little Rest Twelve, Inc. v. Visan*, <u>458 B.R. 44, 2011 U.S. Dist.</u>

---

[4] As defined by N.Y.M.H.L. § 9.01, "qualified psychiatrist" means a physician licensed to practice medicine in New York state who: (a) is a diplomate of the American board of psychiatry and neurology or is eligible to be certified by that board; or (b) is certified by the American osteopathic board of neurology and psychiatry or is eligible to be certified by that board.

5

LEXIS 78731 (S.D.N.Y., July 20, 2011). As this Court may now be reminded, he was even able to file a motion to reopen the matter *Gudavadze v. Kay*, 556 F. Supp. 2d 299, 2008 U.S. Dist. LEXIS 44620 (S.D.N.Y. 2008). In fact, *free and unrestrained*, Plaintiff spent about 2 months in order for DHS to assess his "needs" and assign him to a "permanent shelter." In his declaration at ¶ 6, Plaintiff states:

> On or about June 9, 2011, following more than two months of assessment by the DHS staff at the Bellevue Hospital Men's Shelter, I was referred to a permanent shelter at the Bowery Residents' Committee's ("BRC") Boulevard Residence, a 101-bed men's shelter located at 2270 Lexington Avenue, New York, New York.

The Court may note that nothing in the declaration indicates that Plaintiff was diagnosed with any mental impairment during his stay at Bellevue Hospital Men's Shelter – and not the *Bellevue Hospital Center*, as Defendant falsely alleges. As Plaintiff states at Docket Entry No. 194, ¶ 7, his first encounter with mental illness *misdiagnoses* was a report by an incompetent nurse at the BRC's Boulevard Residence.

During the April 17, 2014 conference, Plaintiff truthfully asserted the same to the Court. Therefore, Defendant's motive in repeatedly bringing this issue before the Court is not but an overt act of harassment.

In a nutshell, as stated throughout his declaration at Docket Entry No. 194, Plaintiff was required to submit to the nurses' examinations to comply with the DHS requirements and maintain his bed. Non-compliance with the requirements is reported by BRC to DHS, which may take a variety of adverse actions, including discharge and disbarment from the New York City's shelters. Moreover, Plaintiff does not have the discretion to choose or request the shelter where he would like to have a bed. This decision is made based upon bed vacancies and at the sole discretion of the DHS processing staff. Sometimes, the homeless individual's needs cannot be satisfied.

Moreover, as reflected by the February 19, 2014 letter from the U.S. Department of Health and Human Services ("HHS"), *see* EXHIBIT C, it appears that BRC, a HIPAA covered entity and not-for-profit organization that operates the shelter where Plaintiff resided and whose

6

practitioners assessed Plaintiff's mental health, is being currently investigated by HHS. Apparently, to avoid any liability, BRC still withholds records. Defendant's counsel may also respectfully request that the Court issue a writ of mandamus directing HHS to promptly complete its investigation so that he may have access to more medical records and subpoena more medical staff, including the OTDA practitioners.

*****

Considering the fact that the Scheduling Order in the instant matter set July 31, 2011 as the deadline for the production of all discovery material, including medical records, Defendant's HIPAA request is untimely, and Defendant's counsel should rather subpoena all Plaintiff's treating practitioners to testify during trial, including Dr. Angela Kedzior, who is now named as a defendant in the pending matter *Azkour v. Bowery Residents Committee, Inc., et al.*, 1:13-cv-05878-TPG. Her aggressive examination by Defendant's counsel will help advance this unrelated civil action towards a final closure. Moreover, Rule 16(b)(4) of the Federal Rule of Civil Procedure provides that "[a] schedule may be modified *only for good cause and with the judge's consent.*" Emphasis is added. Defendant has not heretofore spelled out any good cause for the Court to set another deadline for discovery completion. Whether the Court will set a new deadline or not, Plaintiff, as requested in his letter dated April 21, 2014, Docket Entry No. 201, should be allowed to have a medical expert testify during trial so that he may prove the negligent, incorrect, inexperienced, and erroneous diagnoses of the BRC nurses, along with the fraudulent medical practice of Dr. Kedzior, who is required to supervise the substance and form of said nurses' psychiatric reports.

Defendant has had knowledge of Plaintiff's purported mental illness prior to July 11, 2011. However, its counsel did not diligently seek disclosure of any medical records pertaining to Plaintiff's condition. In other words, Defendant did not obey this Court's Scheduling Order in the instant matter. Further, Defendant could have sought these records when Plaintiff had filed his motion to appoint a guardian ad litem in the Civil Rights Action. Therefore, it is inevitably clear that Defendant's April 25, 2014 request has not been presented to the Court but for an antagonizing and dilatory purpose-that of avoiding trial. In fact, Defendant is now seeking an unfair advantage over Plaintiff because the latter has heretofore supported his contention that, at

all relevant times, he was available, able, and willing to work and search for employment. *See* Docket Entries Nos. 119 and 200.

The Second Circuit has recently opined that, notwithstanding the trial court's prior notice in an order that no further extension of discovery would be granted, the filing of an "expert report seven weeks late without first seeking the court's permission" was "not a transgression warranting the striking of plaintiffs expert report" when the party making such late filing "did not seek an unfair advantage over the adversary in the litigation[.]" *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 160 (2d Cir. 2012).

To a certain extent, the instant case is, of course, not distinguishable from *Shinkong Synthetic Fibers Corp.* Defendant has deliberately litigated this case in a lackadaisical manner and the Court has previously, due to Defendant's dilatory practices, advised its former counsel that no further extensions of discovery deadlines would be granted. In particular, the Second Circuit's opinion in *Shinkong Synthetic Fibers Corp.* nonetheless serves as an important reminder that this Court should allow Plaintiff to introduce a medical expert's report and restrain Defendant from any attempt to request that the Court strike such report on the grounds of an allegedly unexcused noncompliance with the Scheduling Order.

In the Second Circuit, the district courts are directed to consider the following factors in determining whether a motion to strike an expert witness's testimony should be granted as an appropriate sanction for failure to comply with a discovery deadline: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. and Scientific Commc'n, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (citing *Outley v. City of New York*, 837 F.2d 587, 590-91 (2d Cir. 1988)).

Defendant fails to meet the enumerated *Outlay* factors. Therefore, Plaintiff's request to introduce the testimony of a medical expert is warranted and the fees of such expert must be covered by Defendant.

**WHEREFORE**, Plaintiff respectfully requests that the Court (1) deny Defendant's request for an extended, dilatory, and vexatious HIPAA disclosure; (3) direct Defendant to subpoena all the mental health practitioners identified by its counsel as witnesses-experts to provide their opinions and testify <u>under oath</u>[5] as to Plaintiff's mental health condition; and (3) authorize Plaintiff to seek and introduce the opinion and testimony of an *independent* mental health expert to rebut the testimony of the practitioners identified by Defendant.

Respectfully submitted,

Hicham Azkour, pro se

---

[5] By reviewing the sealed Order of the Honorable Fox, U.S.M.J. at <u>Docket Entry No. 86</u> in the Civil Rights Action, this Court should take judicial notice that the practitioners were ordered to furnish *<u>sworn affidavits</u>* assessing Plaintiff's mental health condition. However, in an evasive fashion, administrative staff mailed letters to the chambers of the Honorable Fox. This may lead the Court to conclude that these practitioners and their superiors were not forthcoming and truthful in their testimony and their presence during trial is necessary for Plaintiff to prove his case.

# EXHIBIT A

Andrew Sal Hoffmann Ashlegal@aol.com

David Stein dstein@samuelandstein.com, dnieporent@samuelandstein.com, duvids@gmail.com

Sarah Yeang Khurana (Terminated) skhurana@gkblaw.com

**1:10-cv-04132-RJS-KNF Notice has been delivered by other means to:**

**1:11-cv-05780-RJS-KNF Notice has been electronically mailed to:**

**1:11-cv-05780-RJS-KNF Notice has been delivered by other means to:**

Hicham Azkour
127 West 25th Street
New York, NY 10001

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=1/13/2012] [FileNumber=9524129-0
] [4fb99ddf08934338588fecea75d1671cc23111e5faf8c4326ac9764238ff03f9d1c
e6e193855c3a7ad31f6b79760aece489ffd72f16ac5d3f9c1c56f5d07a00c]]

---

**HICHAM AZKOUR** <hicham.azkour@gmail.com>         Sat, Jan 14, 2012 at 4:44 PM
To: Andrew Hoffmann <ashlegal@aol.com>

Dear Mr. Hoffmann:

Attached is a letter to Judge Sullivan with the material which I request to be filed under seal.

Sincerely,

HICHAM AZKOUR

On 1/13/12 5:02 PM, "Andrew Hoffmann" <ashlegal@aol.com> wrote:

       **Andrew S. Hoffmann, Esq.**
       Hoffmann & Associates
       450 Seventh Avenue, Suite 1400
       New York, New York 10123
       212 679-0400 (phone)
       212 679-1080 (fax)
       917 232-1609 (cell)
       ashlegal@aol.com <mailto:tptdao@aol.com>

       **From:** <NYSD_ECF_Pool@nysd.uscourts.gov>

4/29/2014
Case 1:10-cv-04132-RJS-KNF   Document 205   Filed 05/01/14   Page 12 of 17
Gmail - FW: Activity in Case . Azkour v. Little Rest Twelve, Inc. et al Order

**1:10-cv-04132-RJS-KNF Notice has been electronically mailed to:**

Martin Paul Russo (Terminated)    mrusso@gkblaw.com

Andrew Sal Hoffmann  Ashlegal@aol.com

David Stein  dstein@samuelandstein.com, dnieporent@samuelandstein.com, duvids@gmail.com

Sarah Yeang Khurana (Terminated)    skhurana@gkblaw.com

**1:10-cv-04132-RJS-KNF Notice has been delivered by other means to:**

**1:11-cv-05780-RJS-KNF Notice has been electronically mailed to:**

**1:11-cv-05780-RJS-KNF Notice has been delivered by other means to:**

Hicham Azkour
127 West 25th Street
New York, NY 10001
The following document(s) are associated with this transaction:
**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=1/13/2012] [FileNumber=9524129-0
] [4fb99ddf08934338588fecea75d1671cc23111e5faf8c4326ac9764238ff03f9d1c
e6e193855c3a7ad31f6b79760aece489ffd72f16ac5d3f9c1c56f5d07a00c]]

---

### 6 attachments


**letter_Judge_Sullivan_01142012.pdf**
79K


**PSYCHIATRIC_EVALUATION_KEDZIOR_MD.pdf**
245K


**PSYCHIATRIC_EVALUATION_MCCURTIS_MD.pdf**
365K


**MENTAL_HEALTH_PROVIDER_RESIDENCY_CERTIFICATE.pdf**
57K


**MEDICATION_PRESCRIPTION.pdf**
424K


**ALCOHOL_TREATMENT_PROGRAM_COMPLETION.pdf**
187K

# EXHIBIT B



### ⓘ Click to Close Important Information about Certification Status

In order to remain certified a physician must maintain an unrestricted medical license and satisfy the Maintenance of Certification (MOC) Requirements. Some physicians certified prior to 1994 may have been awarded a lifetime certificate. Those physicians are not required to participate in MOC. To find out more about Maintenance of Certification, visit our Web page at www.abpn.com/moc.html

**Certification Status:** Physicians may be "certified" or "not certified". Certification status is dependent on passing an initial certification examination and maintaining certification. Some physicians certified prior to 1994 may have been awarded a lifetime certificate. They are not required to participate in additional MOC activities to maintain their certification.

**MOC Status:** Physicians may be required to fulfill additional requirements in order to maintain their certification. The additional requirements vary based on the type and year of certification. The MOC status indicates whether or not the physician has reported meeting those requirements.

**Clinical Status:** Physicians are also required to report their Clinical Status. A designation of "clinically active" refers to any amount of direct and/or consultative patient care that a physician has provided in the preceding 24 months. "Clinically inactive" describes a physician who has provided no direct and/or consultative patient care in the past 24 months. Information on clinical activity status is self reported by the diplomate.

### Close this window

**Name : Das , Piali Mukherjee M.D.**          **City : New York**          **State : NY**

| Specialty or Subspecialty | Certification History | Status as of 4/28/2014 |
|---|---|---|
| Psychiatry<br>Certificate No. 48816 | Certified on 09/18/2000<br>certificate valid through<br>12/31/2010 | Certification Status: Not Certified<br>MOC Status: Not Meeting MOC Requirements<br>Clinical Status: Clinically Active |

# EXHIBIT C



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Voice - (212) 264-3313, (800) 368-1019
TDD - (212) 264-2355, (800) 537-7697
(FAX) - (212) 264-3039
http://www.hhs.gov/ocr/

**OFFICE OF THE SECRETARY**

Office for Civil Rights, Region II
Jacob Javits Federal Building
26 Federal Plaza, Suite 3312
New York, NY 10278

Mr. Hicham Azkour
93 Pitt Street, Apt. 3B
New York, NY 10002

FEB 1 9 2014

Our Reference Number: 13-163837

Dear Mr. Azkour:

Thank you for your complaint received on July 31, 2013, by the U. S. Department of Health and Human Services (HHS) Office for Civil Rights (OCR). In your complaint you alleged that Bowery Residents' Committee (the covered entity) has violated the Federal Standards for Privacy of Individually Identifiable Health Information and/or the Security Standards for the Protection of Electronic Protected Health Information (45 C.F.R. Parts 160 and 164, Subparts A, C, and E, the Privacy and Security Rules). Specifically, you allege that on June 26, 2013, you requested a copy of your medical records from the covered entity and your request was denied.

OCR enforces the Privacy and Security Rules, and also enforces Federal civil rights laws which prohibit discrimination in the delivery of health and human services because of race, color, national origin, disability, age, and under certain circumstances, sex and religion.

After careful consideration, OCR has determined that it will pursue action in your complaint. If you have any questions about this letter or the investigation process, please contact Kelli Robinson, Investigator, at (212) 264-3314.

Sincerely,

Eric Brown
Supervisory Equal Opportunity Specialist
Office for Civil Rights

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 PEARL STREET, NEW YORK, NY 10007

Ruby J. Krajick
Clerk

---------------------------------------------------------x
Hicham Azkour

                  Plaintiff,       13 Civ. 5878    (TPG)

      - against -

Bowery Residents Committee, Inc.
et al.
                  Defendant.
---------------------------------------------------------x

    Please be advised that the above-captioned action has been assigned to Judge Thomas P. Griesa.

    Counsel for both sides are directed to attend a pretrial conference for the purpose of determining the status of the case, and fixing a trial date or discussing possible settlement.

    This conference will be held on February 26, 2014 at 11:20 AM, in Courtroom 26B of the United States Courthouse, 500 Pearl Street, New York, New York 10007. There are no cancellations. Kindly notify your adversary by mail, and send a copy of notice to this office. All communication regarding this matter should be directed to Judge Griesa's clerk,

        Mr. Jon Beale
        United States District Court - Clerk's Office
        500 Pearl Street
        New York, NY 10007
        (212) 805-0101

    Please do not telephone the Judge's Chambers except in case of emergency.

Dated: 2/6/14

                Very truly yours,

                Jon Beale
                Jon Beale
                Deputy Clerk