UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/12/14
```

HICHAM AZKOUR,

                      Plaintiff,

-v-

LITTLE REST TWELVE,

                      Defendant.

No. 10 Civ. 4132 (RJS) (KNF)
<u>ORDER</u>

<u>RICHARD J. SULLIVAN</u>, District Judge:

    Now before the Court are Plaintiff's motion for reconsideration of the Court's summary judgment order (Doc. Nos. 187 ("S.J. Order" or the "Summary Judgment Order"), 193 (motion for reconsideration)) and Plaintiff's motion for the appointment of pro bono counsel (Doc. No. 192). For the reasons set forth below, both motions are granted. The Court presumes the parties' familiarity with the background of this case.

I. MOTION FOR RECONSIDERATION

A. Legal Standard

    The Federal Rules of Civil Procedure provide different standards for reconsideration of different types of orders and judgments. For "final judgments, orders, and proceedings," for instance, Rule 60 allows reconsideration in limited circumstances only. *See* Fed. R. Civ. P. 60(b). For non-final orders, on the other hand, Rule 54(b) allows for reconsideration in the district court's equitable discretion. *See* Fed. R. Civ. P. 54(b) (stating that non-final judgments "may be revised at any time before the entry of a [final judgment]"); *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982) ("'So long as the district court has jurisdiction over the case, it

possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so.'" (quoting *United States v. Jerry*, 487 F.2d 600, 6005 (3d Cir. 1973))).[1]

Here, because the Summary Judgment Order was a non-final order, see *LaTrieste Rest. & Cabaret, Inc. v. Vill. of Port Chester*, 96 F.3d 598, 599 (2d Cir. 1996) ("In general, an order denying summary judgment or granting partial summary judgment . . . is nonfinal."), Rule 54(b) and its equitable standard applies. Under that standard, a court must be mindful that "'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Official Comm.*, 322 F.3d at 167 (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)). As such, a motion for reconsideration should be denied unless there is a strong likelihood that the district court's decision would ultimately be reversed on appeal. In that situation, reconsideration saves the parties' (and the Circuit's) time by avoiding a second, unnecessary battle in the Court of Appeals. A strong likelihood of reversal exists, and thus reconsideration should be granted, where there is "an intervening change of controlling law, . . . new evidence, or [a] need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartkov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 108 (2d Cir. 2013) (internal quotation marks omitted). A party can generally establish clear error or manifest injustice by "point[ing] to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

---

[1] Although the Second Circuit has sometimes stated that reconsideration of non-final orders is limited by the law of the case doctrine, *see Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("We have limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case . . . ."), it has also made clear that this limitation is more of a suggestion than a binding rule, *see Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013) ("The doctrine of law of the case is [itself] discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment."); *see also Arizona v. California*, 460 U.S. 605, 618 (1983) ("Law of the case directs a court's discretion, it does not limit the tribunal's power.").

B. Application

In the Summary Judgment Order, the Court held that a genuine factual dispute existed over whether Defendants' retaliatory firing of Plaintiff was a proximate cause of Plaintiff's continued unemployment. (S.J. Order at 6–9.) Specifically, the Court held that a jury could determine that Plaintiff's mental illness was sufficiently a cause of his unemployment to undercut Defendants' responsibility. (*Id.* at 6–8.) In addition, the Court held that no reasonable juror could find that Defendants were proximately responsible for Plaintiff's unemployment after September 7, 2011, the date Plaintiff moved into a homeless shelter for mentally ill adults. (*Id.* at 7–8.) As a result, the Court granted summary judgment to Defendants on Plaintiff's claims for back wages after September 7, 2011. Plaintiff now moves for reconsideration of the Court's granting of summary judgment to Defendants for Plaintiff's claims for back wages after September 7, 2011.[2]

In making its decision, the Court assumed that Plaintiff's assignment to the mental health shelter was indicative of the severity of his mental illness. Plaintiff, however, has now submitted a declaration stating that shelter assignments are mostly random and are not based on an individual's mental health condition. (Doc. No. 200 ¶ 22.) Although Plaintiff did not provide this evidence until after the Court's decision, the Court has reviewed the record and determined that there is scant evidence supporting the Court's conclusion that the assignment to the mental health shelter was indicative of the severity of Plaintiff's mental illness. As such, the Court's conclusion must be reconsidered.

The Court additionally notes that reconsideration of its decision will not prejudice Defendants' litigating position. Whether the Court reconsiders its decision or not, there is going

---

[2] Plaintiff moved for reconsideration on numerous other grounds, all of which the Court rejected at a conference held on April 17, 2014.

to be a trial focused partly on Plaintiff's mental health, the severity of his mental illness, and the date when – if ever – his mental illness became severe enough to relieve Defendants of responsibility. Given that Defendants' position is that Plaintiff has been sufficiently mentally ill to relieve them of liable since the retaliatory firing, and that Plaintiff's position will likely be that he was never sufficiently mentally ill, reconsidering the cut-off-date holding will have no effect on the issue to be tried and will have minimal effect on the evidence to be presented.

Accordingly, the Court holds that a jury will be permitted to decide whether Plaintiff was sufficiently mentally ill or not for the entire period from Plaintiff's firing to the present.

## II. APPOINTMENT OF PRO BONO COUNSEL

### A. Legal Standard

There is no constitutional right to representation by counsel in civil proceedings. *See In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984); *Mackey v. DiCaprio*, 312 F. Supp. 2d 580, 581 (S.D.N.Y. 2004). In its discretion, however, the Court may request counsel to represent a party in non-criminal cases pursuant to 28 U.S.C. § 1915(e)(1). In considering whether to appoint counsel, the Court's first inquiry is whether a party can afford to obtain counsel. *See Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994). If the Court finds that a party cannot afford counsel, it must then examine the merits of the case and "determine whether the indigent's position seems likely to be of substance." *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). "In order to make such a determination, the Court must decide whether, from the face of the pleadings, the claims asserted by the plaintiff may have merit, or the plaintiff appears to have some chance of success." *West v. Brickman*, No. 07 Civ. 7260 (PKC) (DF), 2008 WL 3303773, at *1 (S.D.N.Y. Aug. 6, 2008) (citations and internal quotation marks omitted). "In trial courts, the preliminary assessment of likely merit must be undertaken somewhat more generously since the unrepresented litigant might have difficulty articulating the

4

circumstances that will indicate the merit that might be developed by competent counsel." *Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997).

Following the merits inquiry, the Court should consider several additional factors set forth by the Second Circuit in *Hodge*, including:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

802 F.2d at 61–62; *see Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989). The Court should also be mindful of the Second Circuit's instruction that volunteer lawyer time is a "precious commodity" and that "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper*, 877 F.2d at 172.

## B. Application

Based upon Plaintiff's application to proceed in forma pauperis in his related civil rights case, (*Azkour v. Haouzi*, 11 Civ. 5780 (RJS), Doc. No. 1), he has made some showing of financial hardship. In addition, as discussed above, Plaintiff is currently living in a homeless shelter. Plaintiff therefore qualifies as indigent.

The Court finds that Plaintiff's claim is "likely to be of substance." *Hodge*, 802 F.2d 61–62. Plaintiff has already prevailed on liability, the Court has denied Defendants summary judgment on several damages issues, and the case is ready to go to trial. The Court similarly finds that the other *Hodge* factors weigh in favor of granting Plaintiff's application. Both parties agree that Plaintiff suffers from some form of mental illness, and thus an attorney would greatly aid Plaintiff's ability to conduct cross-examination, present his case, and grapple with the legal issues that a trial could present. In this case, representation likely would "lead to a quicker and

5

more just result by sharpening the issues and shaping examination." *Hodge*, 802 F.2d at 61. The Court therefore determines that requesting pro bono counsel is appropriate in this case. *The Court* notes, however, under the in forma pauperis statute, a court has no authority to "appoint" counsel, but instead, may only "request" that an attorney volunteer to represent a litigant. *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 301–310 (1989). If no attorney is willing to volunteer to assist Plaintiff, there is nothing the Court can do.

III. CONCLUSION

IT IS HEREBY ORDERED THAT Plaintiff's motion for reconsideration is GRANTED with respect to the Court's granting of summary judgment to Defendants for back wages claims after September 7, 2011.

IT IS FURTHER ORDERED THAT Plaintiff's motion for the Court to request counsel is GRANTED. Should counsel volunteer to represent Plaintiff in this matter, counsel shall promptly file a notice of appearance and advise the Court as to whether counsel is available for trial in July.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: May 9, 2014
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

A copy of this order has been e-mailed to:

Hicham Azkour
hicham.azkour@gmail.com