# UNITED STATES DISTRICT COURT

## FOR THE

## SOUTHERN DISTRICT OF NEW YORK

---

**HICHAM AZKOUR,**

*Plaintiff,*

*v.*                                   **Civil Action No. 10-CV-4132 (RJS)(KNF)**

**LITTLE REST TWELVE, INC.**

*Defendants.*

---

## PLAINTIFF'S OBJECTION TO THE COURT'S JURY INSTRUCTIONS

---

HICHAM AZKOUR, pro se

93 Pitt Street, Apt. 3B

New York, New York 10002

Email: hicham.azkour@gmail.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/18/14

1

Pursuant to Rule 51(c), Plaintiff respectfully objects to the Court's instructions to the jury because they do not direct the jurors what type of evidence they should consider to determine whether Plaintiff is mentally disabled and, as such, he has not reasonably attempted to find comparable work.

Plaintiff believes that the failure of the Court to specifying the admissible evidence that should be considered and the laws[1] that govern the issues will lead to errors substantially affecting Plaintiff's rights.

The jurors will not be able to understand the types of mental illnesses that prevent an individual from work and those that don't. This is why Plaintiff has been requesting a medical expert to explain to the jurors the ramifications of mental disorders.

Plaintiff repeatedly asserted to this Court that lay jurors do not have the required medical qualifications to determine whether Plaintiff is mentally disabled. Therefore, the jurors should be allowed to hear and consider relevant, competent, and admissible evidence that does not call for speculation or assumption. Moreover, the Court omits to state facts related to the introduction of this peculiar issue of mental illness. The Court should inform the jurors that living in a mental health shelter does not necessarily mean that the person living in that type of shelters is necessarily mentally ill or necessarily suffers from some type of substance abuse.

Regarding the reasonable mitigation of damages, the jurors should also be explicitly informed that Plaintiff is not required to accept any type of employment so that he may satisfy the mitigation requirement.

---

[1] Plaintiff is aware that the Court will give instructions on the law after the jurors hear the evidence.

Plaintiff also objects to the fact that instructions on punitive damages should be given to the jurors and they should be able to understand the common law underlying such a claim.

For these reasons, Plaintiff objects to the Court's instructions as insufficient and may mislead the jurors into believing that the law does not allow a mentally disabled person to work. The Court's instructions may also mislead the jurors into believing that if Plaintiff has not allegedly accepted "off-the-book" employment, part-time employment, demoting employment, or an employment that pays, for example, $200.00 a week, he has heretofore failed to reasonable and diligently mitigate his damages.

Below are Plaintiff's proposed instructions to the jury:

You are informed that Plaintiff became homeless after his retaliatory discharge by Defendant and currently lives in supportive housing units owned, operated, and managed by the Bowery Residents' Committee. *See* 24 C.F.R. Part 891; *see also* 42 U.S.C. § 8013. After his retaliatory discharge by Defendant on February 9, 2010, Plaintiff was evicted from his apartment in Astoria, New York. He was evicted because he had not been able to pay rent. As a result of this eviction and his inability to find a comparable, alternative employment, he became homeless. He sought shelter as offered by the New York City Department of Homeless Services. According to the laws and regulations of New York, a homeless person may be assigned to any type of shelters, including mental health shelters, even though he may not be chemically addicted or may suffer from a mental illness. *See* 18 NYCRR §§ 900.8 and 900.6. The right to shelter is not a "boundless ... entitlement" and may be subject to eligibility requirements and other

limitations. *See Callahan v. Carey*, 307 A.D.2d 150, 762 N.Y.S.2d 349, 351 (1st Dept.2003). The implementing directive promulgated by the New York State Office of Temporary and Disability Assistance makes it clear that broad discretion is given to local authorities in assigning the homeless to shelters. 94 ADM-20(V)(D)(3). The directive explicitly states, "Homeless persons do not have the right to choose their own temporary placements." *Id.*

You are informed that, since the retaliatory discharge by Defendant, Plaintiff claims he has been searching comparable, alternative employment. In 2010, 2011, and 2012, including the period of his alleged disability, Plaintiff claims he received unemployment compensation benefits because the New York State Department of Labor determined that Defendant terminated Plaintiff. Plaintiff was receiving such benefits because he was searching for employment, was able, ready, and willing to work. Each week, Plaintiff had to submit a Work Search Record to the New York State Department of Labor, as mandated by 20 C.F.R. § 604.3, 12 N.Y.C.R.R. § 473.4, and 12 N.Y.C.R.R. § 473.3.   See EXHIBIT A. Following the exhaustion of his unemployment benefits, Plaintiff started receiving the Temporary Assistance for Needy Families, which consists of food stamps, cash assistance, and shelter assistance. As a recipient of such benefits, Plaintiff has been required to participate in work activities as per 42 U.S.C. § 607(d). Work activities are defined as (1) unsubsidized employment; (2) subsidized private sector employment; (3) subsidized public sector employment; (4) work experience (including work associated with the refurbishing of publicly assisted housing) if sufficient private sector employment is not available; (5) on-the-job training; (6) job search and job readiness assistance; (7) community service programs; (8) vocational educational training (not to exceed 12 months with respect to any individual); (9) job skills training directly related to employment;

4

(10) education directly related to employment, in the case of a recipient who has not received a high school diploma or a certificate of high school equivalency; (11) satisfactory attendance at secondary school or in a course of study leading to a certificate of general equivalence, in the case of a recipient who has not completed secondary school or received such a certificate; and (12) the provision of child care services to an individual who is participating in a community service program.

You are informed that to satisfy the duty to mitigate, "the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position." See *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982). In accordance with the laws of the Second Circuit, it is reasonable and appropriate for you to conclude that Plaintiff has been reasonably diligent in his search for new employment if he presents evidence proving so. Discussing employment opportunities with a friend are "more than sufficient to constitute reasonable diligence". *See Dailey v. Societe Generale*, 108 F.3d 451, 456 (2d Cir.1997)(citing *Hanna v. American Motors Corp.*, 724 F.2d 1300, 1309 (7th Cir. 1984) (finding that filing applications, reading classified advertisements, and discussing employment opportunities with a friend are "more than sufficient to constitute reasonable diligence")).

You are informed that, per 29 U.S.C. § 214(c) and 29 C.F.R. § 525.3(d), the Fair Labor Standards Act does not deny to mentally disabled individuals the right to work and be paid minimum wage. *See, e.g., Weidenfeller v. Kidulis*, 380 F. Supp. 445 (E.D. Wis. 1974); *Souder v. Brennan*, 367 F. Supp. 808 (D.C.D.C. 1973). Under certain conditions, employers are encouraged to hire mentally disabled workers and accommodate them.

Refusal to hire, or rehire, and accommodate mentally disabled workers is discrimination and is prohibited by 42 U.S.C. § 12112. To legitimately justify their refusal, employers must demonstrate that accommodation would impose an undue hardship on the operation of their business.

In this case, Defendant contends that it is not responsible for Plaintiff's inability to find comparable, alternative employment remunerating him an average of $838.68 per week as a busboy in a restaurant. The weekly amount of $838.68 constitutes the hourly wages and gratuities that Plaintiff should have earned if he were properly paid by Defendant. In just 17 weeks, Defendant illegally retained approximately $10,000.00 in Plaintiff's wages and tips.

Defendant contends it is not responsible for Plaintiff's unemployment because (1) Plaintiff is allegedly mentally ill; (2) Plaintiff cannot seek or maintain employment because he is mentally disabled.

Based upon relevant and admissible evidence only, which will be presented to you by the parties, your duty is to determine (1) whether Plaintiff has been mentally ill since he was assigned by the New York City Department of Homeless Services to a mental health shelter on or about September 9, 2011; and (2) if you decide that Plaintiff has been mentally ill since then, you should determine whether Plaintiff's mental illness has been so severe as to present a serious disability preventing him from seeking or maintaining employment.

You should not rely on hearsay or any other inadmissible evidence, such as Plaintiff's alleged inappropriate emails to Defendant's counsel or inappropriate submissions to the Court. You are made aware that Plaintiff is not an attorney and does not have any legal training. He has

been working as a busboy for Defendant in one of its restaurants in New York's Meatpacking District.

To determine mental illness and the inherent disability, Defendant must present to you relevant, admissible evidence consisting of the following:

1. A medical record, such as a psychiatric evaluation, diagnosis, or letter, from Plaintiff's treating mental health physician. Such medical record should be certified and in conformance with Rule 803(6) of the Federal Rules of Evidence. The latter mandates that this record should be accompanied by an affidavit or a testimony from its custodian stating that such record is the record of a regularly conducted activity. *It should state that (1) the medical record is a record of* an act, event, condition, opinion, or diagnosis; (2) the record was made at or near the time by — or from information transmitted by — someone with knowledge; (3) The record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; and (4) Making the record was a regular practice of that activity.

2. An authentic public record from the Social Security Administration determining that Plaintiff is mentally disabled and receives disability benefits.

3. An authentic public record from the New York State Office of Temporary Disability and Assistance ("OTDA") determining that Plaintiff is mentally disabled due to severe mental illness, cannot participate in the work activities mandated by 42 U.S.C. § 601 *et seq.* and, consequently, his case was referred to the Social Security Administration for adjudication.

4. An authentic public record from the New York State Department of Labor determining that Plaintiff is not eligible for unemployment compensation benefits due to mental disability.

5. An authentic public record from the New York State Department of Labor determining that Plaintiff was receiving worker's compensation benefits due to mental illness or any other injury.

6. An authentic public record from a court of law, in any jurisdiction, declaring that Plaintiff is incompetent as the result of a severe mental illness, deficiency, or retardation.

**WHEREFORE**, Plaintiff respectfully requests that the Court consider his proposed instructions at <u>Docket Entry No. 256</u> and instruct the jurors more specifically on the issues and the underlying laws.

Respectfully submitted on July 18, 2014

By:        HICHAM AZKOUR, pro se

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HICHAM AZKOUR,

                          Plaintiff,

        -v-                                                    No. 10-cv-4132  (RJS)

LITTLE REST TWELVE,

                          Defendant.


EXAMINATION OF PROSPECTIVE JURORS AND
PRELIMINARY INSTRUCTIONS
July 21, 2014

## I.    **INTRODUCTION**

Good morning, ladies and gentlemen.  Welcome to the United States District Court for the Southern District of New York.  My name is Richard Sullivan, and I will be presiding over the trial that is about to begin.

The case today is a civil trial, which is entitled *Azkour v. Little Rest Twelve*.  I will describe all of the parties to you in more detail in a moment.

We are about to begin the process of selecting the jurors who will hear and decide this case.  If at any time anyone cannot hear me, please raise your hand.

The trial is anticipated to take approximately three days.  We will be sitting from 9:30 a.m. to approximately 5:30 p.m.  While I can't guarantee that it won't take longer, that is the best estimate that the parties have given me.

Before we get started, I want to thank you for being here.  Your presence reflects your serious commitment to your civic responsibilities.  I recognize that some of you are inconvenienced by this service.  Jury service, however, is one of the highest and most important duties of a citizen of the United States.  Our system of justice depends on you, and I, like all my fellow judges, am grateful to you for your service.

In a few minutes, if you have an extraordinary personal hardship that prevents you from serving in this case, you will have an opportunity to bring that to my attention.  I emphasize the word "extraordinary" because, as I said, I know that many of you have jobs or other responsibilities.  The hardship must be extraordinary for you to be excused. So I appreciate your full cooperation.

2

The purpose of this procedure is to select a panel of eight fair and impartial jurors for this case. So I am going to ask you certain questions with respect to your backgrounds. I apologize in advance for asking you personal questions, which I must, for the purpose of selecting a fair and impartial jury panel. If at any time you feel uncomfortable for any reason in answering a question in front of other jurors, just raise your hand and ask if you may come up to the bench at sidebar, and I will discuss it with you in the presence of the parties and the court reporter only.

My questions – and your responses – enable me to determine if any prospective juror should be excused for cause. "For cause" means that, for one reason or another, the juror might not be fair or impartial, or might not appear to be fair or impartial, in this matter. The questioning also enables the parties to exercise their judgment with respect to their peremptory challenges – that is, challenges for which no reason need be given. Each side has been allotted a certain number of peremptory challenges that they are free to exercise.

If I decide that you should not sit as a juror here, please understand that it does not in any way reflect on you. Our system requires jurors who are not only totally impartial, but also who lack even the appearance of being partial or biased. Such an appearance may arise from a prospective juror's relationship to the case, the parties, or the subject matter of the case.

If for any reason I decide to excuse you, you may still be able to serve as a juror in a different case, so I will ask you to return to the central jury room.

3

## II.   <u>OATH</u>

Before I begin my questions, I will ask all of the prospective jurors to stand so that Mr. Siegel, my law clerk, can administer the oath that you will respond truthfully and completely to my questions.

*[Administer the oath.]*

## III.   <u>FILLING THE BOX</u>

The jury will ultimately consist of eight jurors. We will start the questioning with fourteen of you, randomly selected, to sit in the jury box. I will be directing my questions at these first fourteen individuals. As to these individuals, if your answer to any of my questions is "yes," please raise your hand when that question is asked. You should also tell me if you feel uncomfortable giving your answer in open court.

As I said a moment ago, to those individuals who are not among the first fourteen people selected, you should also listen carefully to my questions, because some of you will be called upon to take the place of those who are excused for cause.

I am now going to provide you with a written questionnaire. You are not to fill it out. It is merely provided to be an aid to you and to others who have not been called yet. If any of you who have been called to sit in the jury box have affirmative answers to any questions, you should raise your hand after I have read that question. For those of you who have not been called, but may later be asked to take the seat of a prospective juror who has been excused, you should also follow along. If you do end up taking a seat, I will ask you to refer to the questionnaire and quickly tell me if you have any affirmative answers to the questions it contains.

4

Once I have resolved all the challenges for cause, the parties will exercise their peremptory challenges. Eight of the fourteen will be left, and they will be our jury.

Mr. Siegel, will you bring up the first fourteen individuals?

## IV.   <u>SUMMARY OF THE CASE</u>

So you can understand the reason for the questions I will be asking you shortly, I will now tell you briefly about this case. I want you to understand that nothing I say today regarding the description of the case is evidence. The evidence that you will consider, if selected as a juror, will only come from the trial testimony of witnesses, from the stipulations of the parties, and from exhibits that are admitted into evidence.

As I have explained, this is a civil case, and it is called *Azkour v. Little Rest Twelve.* This case involves a claim for damages by Hicham Azkour, whom I will refer to as the Plaintiff, against a business, Little Rest Twelve, which I will refer to as the Defendant. For this case, the following facts are undisputed: Plaintiff worked for Defendant for four months in 2009 and 2010 as a busboy at a restaurant Defendant owned. Defendant failed to pay Plaintiff minimum wage and overtime and withheld Plaintiff's tips. Plaintiff complained to Defendant and the Department of Labor that he was not being paid properly, and in retaliation for those complaints, Defendant fired him. Plaintiff has been unemployed ever since. Based on those facts, Plaintiff claims that Defendant should pay him back wages for the entire period between when he was terminated and now, as well as punitive damages. Defendant claims that it is not responsible for Plaintiff's unemployment for either of two reasons: (1) Plaintiff has not reasonably attempted to find comparable work, and (2) the proximate cause of Plaintiff's

unemployment is Plaintiff's own mental illness. Defendants also deny that they should pay punitive damages.

This is a civil case and not a criminal case, and no one will go to prison as a result of the verdict in this case. Now I will begin my questions.

1.     Do any of you know anything about the facts of this case?

2.     Have any of you heard, read, or seen anything that, for any reason, would prevent you from rendering a fair and impartial judgment in this case?

3.     Do any of you feel, for any reason, that you could not view fairly and impartially a case involving allegations such as I have described?

4.     Have any of you formed an opinion that the wage and hour violations and the retaliation, as I have described them to you, should not be against the law?

## V.     INTRODUCTION OF THE PARTIES AND COUNSEL

The Plaintiff in this case is Hicham Azkour. Mr. Azkour is representing himself, as is his right. Mr. Azkour, please stand and face the jurors.

The Defendant is Little Rest Twelve, a business that ran a restaurant called Anja Bar, at 25 Little West 12th St., here in New York. The Defendant is represented by Andrew Hoffmann and Tram Lopresto, of Hoffmann and Associates. Mr. Hoffmann and Ms. Lopresto, please stand and face the jurors.

5.     Do any of you know, or have you had any personal or business dealings with, any of the parties, their counsel, or their firm?

6.     Do any of you know, or have you had any personal or business dealings, directly or indirectly, with any relatives or associates of the parties or their attorneys?

6

7.      Have you, or has any member of your family or any close friend, ever been employed by, or had dealings with, any of the parties or their attorneys?

8.      Are you familiar with anyone else present in the courtroom, including your fellow jurors, all Court personnel, or myself?

## VI.    **WITNESSES**

I will now read the names of potential witnesses in this case, as well as other individuals and entities whose names may be mentioned during the trial:

- Jessica Comperiati

- Panayiotis Boyiakis

- Bodgan Mykhalus

- Franck Maucort

- Nina Zajic

- David Kay

- Abderrahmane "Peter" Eljastimi

- Anja Bar

9.      Do any of you know, or have any of you or your family members or close friends had any dealings with, directly or indirectly, any of these individuals?

10.     If so, is there anything about your familiarity with or knowledge of these individuals or entities that could affect your ability to be fair and impartial in this case?

## VII. <u>QUESTIONS SPECIFIC TO THE CASE</u>

11.     Have you, or has any member of your family or any close friend, been unemployed during the last five (5) years?  If so, describe your or their search for a new job and whether you or they were able to find one.

12.     Have you, or has any member of your family or any close friend, worked in a restaurant?  If so, please describe your or their duties and explain how you or they obtained that position.

13.     Have you, or has any member of your family or any close friend, sued or made a claim against an employer for unfair treatment, including but not limited to claims concerning overtime pay or retaliation?  If so, please describe who made the claim, the reasons for the claim, and how the claim was resolved.

14.     Have you, or has any member of your family or any close friend, suffered from mental illness?  If so, please describe your or their symptoms and whether and how it impacts your or their ability to find and maintain employment.

15.     Do you have any feelings about people who bring lawsuits that would prevent you from sitting impartially on this panel?

16.     Do you have any feelings about employees or employers that would prevent you from sitting impartially on this panel?

## VIII. <u>PRIOR JURY SERVICE</u>

17.     Have any of you ever sat as a juror before in any type of case?  If so, please state whether the case was in state or federal court, whether it was a civil or criminal matter, and, without telling us what the verdict was, whether a verdict was reached.

18.    Have any of you served as a grand juror?  If so, please indicate where and when you served, and describe, in general terms, the kind of cases you heard.

19.    For those of you who have described prior jury service, is there anything about your prior experiences as a juror that would prevent you from acting as a fair and impartial juror in this case?

## IX.    PRIOR EXPERIENCE WITH THE COURT SYSTEM

20.    Have you, or has any member of your family or any close friend, ever participated in a state or federal court case, whether criminal or civil, as a witness, plaintiff, or defendant?  If so, what kind of case?  What was your role in that case?

21.    Is there anything about that experience that would prevent you from acting as a fair and impartial juror in this case?

22.    Have you ever testified in a legal proceeding?   If yes, what were the circumstances?

23.    Have you ever studied or practiced law or worked in any capacity for a law office?

24.    Is any member of your family or is any one of your close friends a lawyer? If yes, please describe your relationship to those people and the type of law that they practice.

## XI.   TRIAL ADMINISTRATION & BASIC LEGAL PRINCIPLES

25.    As I told you, I expect this trial to take approximately three days.  Do any of you have any physical problems or an extraordinary personal hardship that would prevent you from serving in this case for the amount of time I have indicated?

9

26.   Do any of you have any difficulty with your sight or hearing that could affect your perception of the proceedings?

27.   Are any of you taking any medication that would prevent you from giving full attention to all of the evidence at this trial?

28.   Do any of you have any difficulty understanding or reading English?

29.   Do any of you have any religious, moral, or ethical beliefs that would prevent you from passing judgment on another person?

30.   I don't know if the case will generate any publicity, but if it does, will each of you accept the proposition that you should absolutely avoid reading about this case in the newspapers, or listening to any radio or television reports concerning the case, until after it is over?  If not, please raise your hand.

31.   Under the law, the facts are for the jury to determine and the law is for the Court.  These two areas are separate and distinct.  At the end of the case, I will instruct you on the law, and you are required to accept the law as I explain it to you.  It will be your job to determine the facts on the basis of the law as I have explained it to you.  Do any of you feel that you would be unable to follow my instructions in this regard?

32.   You are required by law to make your decision based solely on the evidence or lack of evidence presented in court, and not on the basis of conjecture, suspicion, sympathy, or prejudice.  Would any of you have difficulty accepting and applying this rule of law?  If so, please raise your hand.

33.   I will instruct you that the Plaintiff has the burden to prove his case on some issues and that the Defendant has the burden to prove its case on other issues.

10

Would any of you have difficulty accepting and applying this rule of law?  If so, please raise your hand.

34.     Have you, either through any experience you have had or anything you have seen or read, developed any bias or prejudice, positive or negative, based on race or national origin that may inhibit your ability to be a fair and impartial juror in this case?

*[The Court and the parties will discuss and resolve for-cause challenges at side bar.]*

## XI.   <u>QUESTIONS FOR INDIVIDUAL PROSPECTIVE JURORS</u>

I'm now going to ask each of you a few questions designed to give the parties a better sense of you as a person.

35.     What is your county of residence?

36.     What is the highest level of schooling you have completed?

37.     What is your present employment?  How long have you held your current position?  If retired, what did you do before?

38.     Do you have a spouse or partner?  If so, how is he or she employed?  Do you have any children?  How old are they?  What do they do for a living?  Is there anyone else living in your household?  Who?  What do they do for a living?

39.     What is your principal source of news?

40.     What type of magazines, newspapers, and books do you read on a regular basis?

41.     What television programs do you watch on a regular basis?

42.     Do you belong to any associations or clubs or unions?

11

43.     What do you do in your spare time?

## XII.  SUMMARY QUESTION

44.     As you can tell from my prior questions, the fundamental issue here is whether there is anything in your personal history or life experience that would prevent you from acting as a fair and impartial juror.  So let me ask you one final time, is there anything – whether I have asked specifically about it or not – that would affect your ability to render a fair and impartial verdict in this case?

* * *

From time to time during the trial it may become necessary for me to talk with the parties out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom – what we call a "sidebar" – or by calling a recess. Please understand that while you are waiting, we are working.  The purpose of any conference outside your viewing is not to keep relevant information from you, but to decide certain procedural issues or how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Now, we will be going to sidebar to discuss the challenges that the parties may have.

*[Parties and Court discuss peremptory challenges at sidebar.]*

## XII.  SECOND OATH

Mr. Siegel will now swear in the jury.

*[Following the oath, the Court will give the attached preliminary instructions to the jury.]*

12

## PRELIMINARY INSTRUCTIONS TO THE JURY

Members of the jury, now that you have been sworn, I will give you some preliminary instructions to guide you in your participation in the trial.

### A.   Impartiality

To begin with, you are here to administer justice in this case according to the law and the evidence. You are to perform this task with complete fairness and impartiality, and without bias, prejudice, or sympathy for or against either party.

### B.   Finding The Facts

It will be your duty to find from the evidence what the facts are. You and you alone will be the judges of the facts. You will then have to apply those facts to the law as I will give it to you. You must follow that law whether you agree with it or not. Nothing I may say or do during the course of the trial is intended to indicate, or should be taken by you as indicating, what your verdict should be.

The evidence from which you will find the facts will consist of the testimony of witnesses, documents, and other things received into the record as exhibits, as well as any facts that the parties agree to or stipulate to or that I may instruct you to find.

Certain things are not evidence and must not be considered by you as evidence. I will list them for you now:

First, statements, arguments, and questions by lawyers or parties are not evidence, nor are my own statements to you evidence. Only the answers given by the witnesses are evidence.

13

Second, objections to questions are not evidence. The parties and lawyers have an obligation to make an objection when they believe the evidence being offered is improper under the rules of evidence. You should not be influenced by my ruling on an objection. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Third, testimony that I have excluded or told you to disregard is not evidence and must not be considered.

Finally, anything you may have seen or heard outside the courtroom is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in the courtroom.

When you are determining the facts, keep in mind that there are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as the testimony of an eyewitness. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. The word "infer" – or the expression "to draw an inference" – means to find that a fact exists from proof of another fact. An inference is to be drawn only if it is logical and reasonable to do so, and not by speculation or guesswork.

In deciding whether to draw an inference, you must look at and consider all the facts in the light of reason, common sense, and experience. Whether a given inference is or is not to be drawn is entirely a matter for you, the jury, to decide. Circumstantial

14

evidence does not necessarily prove less than direct evidence, nor does it necessarily prove more.

Here is an example to help you think about the difference between direct and circumstantial evidence. Assume that when you came into the Courthouse this morning the sun was shining and it was a nice day outdoors. Also assume that the courtroom blinds were drawn and you could not look outside. Assume further that, as you were sitting here, someone walked in with an umbrella that was dripping wet and then, a few moments later, somebody else walked in with a raincoat that was also dripping wet.

Now, because you could not look outside the courtroom and you could not see whether it was raining, you would have no direct evidence of the fact that it was raining. But, on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it was raining.

That is all there is to circumstantial evidence. You infer on the basis of reason, experience, and common sense from one established fact the existence or the nonexistence of some other fact. I will give you further instructions on these as well as other matters at the end of the case, but keep in mind that you may consider both kinds of evidence.

C.    <u>Credibility Of Witnesses</u>

One of your most important tasks as jurors is to evaluate the credibility of the witnesses who will testify before you – that is, how truthful and believable they are. Listen carefully as each witness testifies during both direct and cross examination and consider whether the witness is telling the truth. It will be up to you to decide which

15

witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject.

Now, how do you decide what to believe and what not to believe?  You are to listen to the witnesses, observe their testimony, and then decide as you would decide such questions in your own life.  Did they know what they were talking about?  Were they candid, honest, open, and truthful?  Did they have a reason to falsify, exaggerate, or distort their testimony?  Sometimes it is not what a witness says, but how he or she says it, that may give you a clue as to whether or not to accept that witness's version of an incident or an event as credible or believable.

In short, the way a witness testifies may play an important part in your reaching a judgment as to whether or not you can accept the witness's testimony as reliable.

**D.    Burden Of Proof**

As you know, this is a civil case.  Each party has the burden of proving his or its claims by what is called a preponderance of the evidence.  Plaintiff has the burden of proving his claim for punitive damages.  Defendant has the burden of proving its claims that (1) Plaintiff has not reasonably attempted to find comparable work, and (2) the proximate cause of Plaintiff's unemployment is Plaintiff's own mental illness.  Those of you who have sat as jurors on criminal cases or watched television have heard of the standard of proof "beyond a reasonable doubt."  That standard does not apply to a civil case such as this, and therefore you should put it out of your mind.

What does "preponderance of the evidence" mean?  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not

true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. This means that a party has to produce evidence that, considered in light of all of the facts, leads you to believe that what that party claims is more likely true than not.

To put it differently, imagine you are reviewing Plaintiff's claim for punitive damages. If you were to put the evidence that supported Plaintiff's claim on one side of the scale, and the evidence that supports Defendant on the other side of the scale, Plaintiff would have to make the scales tip somewhat in his favor to prove his claims by a preponderance of the evidence. If Plaintiff fails to do that, he has not met his burden and your verdict on Plaintiff's claim for punitive damages must be for Defendants. The reverse would be true, of course, for Defendant's claims.

**E.    Pro Se Representation**

Plaintiff has decided to represent himself and not to use the services of a lawyer. He has a right to do that. His decision has no bearing on whether his claim is true or not true, and it must not affect your consideration of the case.

Because Plaintiff has decided to act as his own lawyer, you will hear him speak at various times during the trial. He will make opening and closing arguments and will ask questions of witnesses, make objections, and argue to the court. When Plaintiff speaks in these parts of the trial he is acting as a lawyer in the case, and his words are not evidence. The only evidence in the case is the testimony of witnesses under oath, the exhibits

17

admitted into evidence, and the stipulations. Additionally, if Plaintiff does not question a witness, that is not evidence that he accepts as accurate that witness's testimony.

**F.    Conduct As Jurors**

Now, a few words about your conduct as jurors.

First, during the trial, you are not to discuss the case with anyone, nor are you to permit anyone to discuss it with you. This includes posting anything on the Internet about the case, whether it be on personal blogs, Facebook, or Twitter. Until you retire to the jury room at the end of the case to deliberate, you simply are not to talk about this case with anyone – including your spouse, family, or close friends. Do not even discuss the case with each other until you begin your actual deliberations at the end of the trial.

Second, please do not, while you are serving as jurors in this trial, have any conversations with the parties, the attorneys, or any witnesses in this case, whether in the courtroom, in the hallways, in the elevators, outside, or anywhere else. By this, I mean not only to avoid talking about the case; do not talk at all, even to say "good morning" or to acknowledge any of these people. Someone seeing a juror in conversation with a party, lawyer, or witness might think that something improper was being discussed. To avoid even the appearance of impropriety, then, avoid any such contact or conversations. By the same token, when the parties, lawyers, or witnesses pass you in the halls without even acknowledging your presence, they do not mean to be rude – they are simply following my instruction.

Third, do not read or listen to anything outside the courtroom that relates to this case in any way. Similarly, you are not to allow anyone to speak to you about this case.

If you are approached by anyone to speak about it, politely but firmly tell them that the judge has directed you not to do so.  If any person seeks to contact you about this case, you are required to report the incident promptly to me by informing my law clerk, Mr. Siegel.  In the event someone contacts you about this case, don't discuss it with your fellow jurors.  In fact, don't even mention it to your fellow jurors.

Also, inform Mr. Siegel if any person that you know comes into this courtroom.  This is a public trial so this could happen.  But it is important that you do <u>not</u> hear from them what may have happened in the court while the jury was not present.  If you should see a friend or relative come into court, please raise your hand or let Mr. Siegel know at your first opportunity.

Fourth, do not try to do any research or make any investigation about the case or the issues presented by this case.  For example, do not go onto the Internet tonight and research any matters relating to this case.  Do not call up your lawyer friends to ask about the type of matters at issue in this case.

Finally, do not form any opinion until all the evidence is in.  A case can be presented only step by step, witness by witness, until all the evidence is before you.  Keep an open mind until you start your deliberations at the end of the case.

**G.**     **Notes**

You are permitted to take notes during the trial.  Mr. Siegel has given each of you a notepad and pen.  Please write your name on the cover of the pad.  If you do take notes, please do so only in these pads.

First, we will have opening statements. The opening statements are neither evidence nor argument; they are simply outlines of what the parties believe the evidence will show, and they are given to help you follow the evidence as it is presented.

After the opening statements, Plaintiff will present his case. Plaintiff will call his witnesses, and after each witness testifies on direct examination, Defendants' counsel will have the opportunity to cross-examine the witness. After the cross-examination, there may be a little bit of what we call re-direct and re-cross examination.

After Plaintiff presents his evidence, he will rest. Defendants may then present a defense case, if they wish. After the evidence is completed and both sides have rested, the parties will give their summations. This is their final opportunity to summarize the evidence and to give their closing arguments.

Following the summations, I will give you instructions on the law. You will then, finally, retire to deliberate on your verdict. You have a tremendously important task as jurors. It is to determine the facts. You, and not the court, are the sole judge of these facts, so I know you will pay careful attention throughout the trial as you endeavor to do your duty as jurors in this case.

Remember that any notes you take are for your use only, and they are only to be used as an aid for your memory. Your memory controls. If you do take notes, be careful not to get so involved in taking notes that you are not listening to the evidence. Once you are in your deliberations, if there is a disagreement between one juror's notes and another juror's notes, or between one juror's notes and another juror's recollection, you can ask to have the court reporter read back the testimony, or to have that portion of the transcript sent to you, for it is the official court transcript that controls, not any particular juror's notes.

During the course of the trial, exhibits will be received into evidence. They will be marked by exhibit number. If there is an exhibit that you are particularly interested in seeing, write down the exhibit number, and you can ask to see the exhibit once you are in your deliberations. At the end of trial, as you begin your deliberations, we will provide each of you with a list of all witnesses who testified during the trial, as well as a list of all exhibits that have been received in evidence.

**H.**     **Course Of The Trial**

We will now begin the trial. In this trial, we will begin each day at 9:30 a.m. and continue until approximately 5:30 p.m. Please be on time. If any of you are late, we will have to wait, because we cannot start until all of you are here, and all of us – myself, the lawyers, the parties, the witnesses, and your fellow jurors – will have to wait. And if we lose ten or twenty minutes every day, we may not be able to get the trial completed on time.