The Honorable Richard J. Sullivan, U.S.D.J.  
Thurgood Marshall  
United States Courthouse, Room 905  
40 Foley Square  
New York, NY 10007

HICHAM AZKOUR  
93 Pitt Street, Apt 3B  
New York, New York 10002  

Telephone: (917) 859-6550  
Email: hicham.azkour@gmail.com

December 1, 2014

**Via ECF**

Re: *Azkour v. Little Rest Twelve, Inc.*, <u>10-CV-4132 (RJS)</u>



Dear Judge Sullivan:

In response to the letters filed by defendant Little Rest Twelve, Inc. ("Defendant"), the plaintiff in the above-referenced matter ("Plaintiff") is tremendously dismayed by Defendant's new accusations that he has engaged in *ad hominem* attacks. *See* <u>Docket Entries Nos. 313 and 314</u>. Plaintiff contends that these accusations are unsubstantiated, malicious, and constitutes overt acts of intimidation.

First of all, there is no evidence that Plaintiff's discussion of utterly legal concerns and the way those concerns were communicated can be objectively regarded as *ad hominem* acts or assertions. Plaintiff's arguments in his letters to the Court do not arise or appeal to emotions. They strictly address legal claims. In said letters, Plaintiff supports his arguments by reason, logic, and legal authorities. Moreover, his arguments do not attack any party's motives or character. Instead, Plaintiff's arguments unambiguously tackle Defendant's unsustainable and unviable positions regarding certain claims. Furthermore, Defendant's accusations do not indicate to which party the alleged *ad hominem* attacks were addressed or directed.

In his letter dated November 17, 2014, <u>Docket Entry No. 310</u>, Plaintiff respectfully addressed the Court's change of mind regarding his right to poll the jurors.

1

Plaintiff's letter was filed to genuinely raise a legitimate issue. It was not filed for any improper purpose. Questioning his involuntary failure to poll the jurors does not necessarily means that Plaintiff's motive is to attack the integrity of this Court, as insinuated by Defendant. By submitting his November 17, 2014, Plaintiff respectfully requests the Court's opinion regarding a right afforded by Rule 48 of the Federal Rules of Civil Procedure. Plaintiff supports his request by decisions from the U.S. Supreme Court and the U.S. Courts of Appeals.

Defendant's interpretation of Plaintiff's legitimate polling request as an *ad hominem* attack is not correct. It is just slanderous. It is an overt attempt to distract the Court from seriously considering Plaintiff's meritorious arguments and to maliciously present Plaintiff as a pro se litigant who is purely interested in antagonizing the Court and Defendant. However, as reflected by his post-trial motions in this matter, there is no doubt that Plaintiff genuinely questions the outcome of the July 21-22, 2014 trial and seeks this Court's opinion as to why a new trial may not be warranted, considering the arguments raised by Plaintiff in said motions and his contention that this Court did not allow him to approach the jurors and poll them.

In its letter to the Court, *see* Docket Entry No. 313, Defendant argues that the record indicates that Plaintiff polled the jurors. However, there is evidence that Defendant's counsel had already left courtroom No. 905 (where trial was held) when the Court directed Plaintiff to stay away from the jurors. Cameras in this courtroom and within the courthouse may reveal that Defendant's counsel had exited said courtroom well before this Court finished polling the jurors and prior to Plaintiff's express request to the Court that he poll the jurors. Video footage may even show Plaintiff directing the Court's attention by pointing his finger at a notebook, which had been abandoned by one of the jurors in the jurors' box. Any video footage by the courthouse's cameras will show that Plaintiff had no contact whatsoever with the jurors.

Quite vaguely, Defendant states:

> Contrary to Mr. Azkour's claims, the record in this matter confirms that the jurors were indeed polled after they rendered their verdict.

See Docket Entry No. 313. Indeed, there is no doubt that the Court polled the jurors after their discharge on July 22, 2014. Yet, the trial transcript does not particularly show that Plaintiff, in his turn, polled them as well. And as stated above, there is additional evidence pointing to the fact that Plaintiff never conducted a polling transaction – a right he did not waive in the first place, as shown by the trial transcript. See Docket Entry No. 295.

In any event, respectfully raising the polling issue before this Court is undisputably legitimate and does not constitute an *ad hominem* attack, whether against Defendant, its counsel, or the Court. Therefore, Defendant's assertion that there is evidence from the record showing that Plaintiff polled the jurors is a bald misrepresentation and the Court is respectfully requested to enjoin Defendant from further, deliberately making false statements.

In addition to the polling issue, Defendant falsely alleges that by disputing the alleged closure date of March 15, 2013, Plaintiff made irrelevant and *ad hominem* assertions. Paradoxically, Defendant states:

> Mr. Azkour does not dispute and in fact concedes that Ajna Restaurant permanently closed on March 15, 2013. Contrary to his contentions, this is the only fact relevant to the present litigation because, *under applicable law*, once the restaurant closed plaintiff's entitlement to back pay extinguished as there was no job for him to go back to.

See Docket Entry No. 314 (emphasis added). This statement is a misrepresentation and a mischaracterization of Plaintiff's statements in his November 18, 2014 letter. See Docket Entry No. 311. As a matter of fact, Plaintiff has no knowledge whether Defendant's restaurant closed or reopened on March 15, 2013. Plaintiff is not one of Defendant's

corporate officers so that he may enjoy the privilege of having direct knowledge of Defendant's operations. Only its corporate officers have the authority to produce testimony as to Defendant's alleged acquisition by a third party or its alleged cessation of business activity.

Plaintiff's November 18, 2014 letter, <u>Docket Entry No. 311</u>, unambiguously states that he disputes the March 15, 2013 fictitious date and believes it is just a pretext to deny him back pay and front pay. Plaintiff believes that March 15, 2013 is irrelevant as to whether Defendant is responsible for Plaintiff's unemployment. If this date is indeed relevant, as falsely claimed by Defendant, then the Court should not have allowed its counsel to present any evidence to the 8 jurors regarding Plaintiff's alleged failure to mitigate his damages after this very date. This is common sense. And if this date is indeed relevant as the ultimate cap to Plaintiff's back pay and front pay, it should have been decided by the jurors – not by Defendant's unreliable witnesses. All things considered, the verdict, nevertheless, does not indicate that a decision was made as regards this arbitrary date.

Defendant's statement is purposefully misleading as it refers to an *unspecified applicable law*. Defendant has never specified this *applicable law*, whether during trial or through his written submissions. However, the applicable laws or authorities are the ones Plaintiff asserts in his letter. Specifically, Plaintiff asserts that Defendant's restaurant is not his employer as per 29 U.S.C. §§ 203(a) and 203(d) and, hence, any argument that Defendant is not responsible for Plaintiff's unemployment due to a fictitious sale is not an acceptable legal argument. Furthermore, it is undeniable that this Court is perfectly aware (consistent with its March 27, 2012 Order) that Little Rest Twelve, Inc. is the *only* defendant named in the instant matter and, consequently, the closure of one of its business assets does not change the fact that defendant Little Rest Twelve, Inc., its legal representative, and its shareholders remain Plaintiff's employers by virtue of 29 U.S.C. §§ 203(a) and 203(d). Thus, they owe him back, front pay, liquidated damages, and punitive damages.

4

Additionally, this Court is aware that, in accordance with New York law, the restaurant's closure or sale should have been competently determined by admissible evidence consisting of the testimony of Defendant's corporate representatives or Defendant's corporate records. None of this was allowed during the July 21-22, 2014 trial. Perhaps, this is the reason why the verdict form does not address this particular issue.

Finally, in its letter at Docket Entry No. 312, Defendant boldly uses an unacceptable, illegitimate defense to avoid its responsibilities as an employer, despite the clarity of the legal arguments and authorities advanced by Plaintiff in his November 14, 2014 letter. *See* Docket Entry No. 309. Defendant did not present any argument or cite any authority to convince this Court as to why it should not comply with the laws relative to taxation and labor. Defendant did not support its position as to why no deductions should be applied by a U.S. employer to withheld wages if these wages are paid from a trust managed and/or maintained by a foreign entity outside a United States jurisdiction.

The nature of its submissions at Docket Entries Nos. 312, 313, and 314 convinces Plaintiff that Defendant has been indeed expending exorbitant legal fees to defend in the present matter and the related Civil Rights Action. Plaintiff understands that Defendant's counsel, based upon the abnormally and deliberately multiplied submissions, has been trying to have this Court's attention focused on justifying and translating those submissions in terms of Defendant's unquestionable willingness to honor the fees. Plaintiff really understands the logic of such practice. Yet, he believes that - closing on almost five years - such long practice should be terminated by a meaningful resolution. Defendant's allegations that Plaintiff has engaged in *ad hominem* acts are not substantiated and should not be further used as an argument justifying the shaky and dubious logic of expending exorbitant legal fees.

Contrary to what Defendant wishes to paint before this Court, Plaintiff does not bear Defendant's employees or their counsel any ill will. If Plaintiff were spiteful or felt some sort of animosity towards them, he would not set foot in Defendant's counsel's

5

office. Despite some unfortunate incidents of which the Court is well aware and for which Plaintiff has already been unfairly sanctioned, Plaintiff has never had any intention to use this forum for inappropriate reasons. However, any inappropriate action used by Defendant, such as its false accusations, to intimidate Plaintiff and cause him to relinquish his rights is not acceptable. By engaging in this type of conduct or, rather misconduct, Defendant would be thinking on its feet.

**WHEREFORE**, Plaintiff respectfully requests that this Court reject Defendant's submissions at Docket Entries Nos. 312, 313, and 314 as irrelevant, frivolous, and provocative.

Plaintiff respectfully requests that the Court dismiss the aforementioned submissions because they were not filed in good faith, such as to address and resolve legitimate issues pertaining to the instant matter. Defendant's submissions were filed with the intent to nurture a hostile and vexatious litigation environment, mainly by engaging this Court to misinterpret Plaintiff's submissions as an attack on the Court's integrity. Defendant's unfair practice has become a pattern and Plaintiff respectfully reminds the Court of such pattern as reflected by inappropriate statements made during the July 17, 2014 conference. *See* Docket Entry No. 307.

Plaintiff respectfully requests that the Court enjoin Defendant from further adopting such nefarious and unethical defenses as they negatively interfere with the normal prosecution of this matter and the high decorum requirements set by the Court.

Respectfully submitted,

Hicham Azkour, pro se