UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



HICHAM AZKOUR,

                Plaintiff,

   -v-

LITTLE REST TWELVE,

                Defendant.

No. 10-cv-4132 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

      From July 21, 2014 to July 22, 2014, the Court presided over a jury trial with respect to the damages sustained by Plaintiff Hicham Azkour in this Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") case. At the conclusion of the trial, the jury returned a verdict finding that Defendant Little Rest Twelve was liable for twelve weeks of Plaintiff's unemployment; the jury also awarded Plaintiff $50,000 in punitive damages. Now before the Court are (1) Plaintiff's renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), or, in the alternative, for a new trial pursuant to Rule 59 (Doc. Nos. 288, 297), and (2) Defendant's renewed motion for judgment as a matter of law under Rule 50(b) (Doc. No. 298–99). For the reasons set forth below, Plaintiff's motion is denied, and Defendant's motion is granted in part and denied in part.

## I. BACKGROUND

### A. Facts

      The Court assumes the parties' familiarity with the case. On May 19, 2010, Plaintiff brought this action, alleging violations of the FLSA and NYLL, including, *inter alia*, claims for unpaid overtime, failure to pay minimum wage, unjust enrichment, and retaliatory termination.

(Doc. No. 1.)  On March 27, 2012, following Plaintiff's motion for summary judgment as to liability, the Court fully adopted the Report and Recommendation (Doc. No. 91) of the Honorable Kevin Nathaniel Fox, Magistrate Judge, recommending that the Court enter partial summary judgment in favor of Plaintiff against Defendant on Plaintiff's FLSA and NYLL wage and hour claims, NYLL spread-of-hours claim, FLSA and NYLL retaliation claims, and FLSA and NYLL liquidated damages claims.  (Doc. No. 98.)  On March 26, 2014, the Court granted Plaintiff partial summary judgment for damages, in the amounts of $9,795.94 on his wage and hour claims and $6,776.84 on his retained tips claim, for a total award of $16,572.78.  (Doc. No. 187.)  Additionally, after rejecting Defendant's assertions that punitive damages were not available for an FLSA retaliation claim, the Court denied the parties' cross-motions for summary judgment on the issues of back pay and punitive damages, finding that both were questions for the jury to resolve at trial .[1]  (Id.)  On July 21–22, trial commenced on the issues of back pay and punitive damages.  After deliberating, the jury found for Plaintiff on both issues, finding that twelve weeks of Plaintiff's unemployment were proximately caused by Defendant's unlawful termination of Plaintiff, and that Defendant was liable for $50,000 in punitive damages.  (See Doc. No. 279.)

On August 13, 2014, Plaintiff filed a motion for judgment as a matter of law pursuant to Rule 50(b), or, in the alternative, for a new trial pursuant to Rule 59.  (Doc. Nos. 287–89.)  On

---

[1] The Court's March 26, 2014 Order granted Defendant's motion for summary judgment with respect to back pay after September 7, 2011, finding that by that date, "Plaintiff's illness had become serious enough that he moved into a homeless shelter for mentally ill adults." (Doc. No. 187 at 7.)  However, based on Plaintiff's declaration that shelter assignments "are mostly random and based on the availability of [beds]" (Doc. No. 200 ¶ 22), on May 9, 2014, the Court granted Plaintiff's motion for reconsideration on summary judgment for back pay post-dating September 7, 2011.  (Doc. No. 210.)  The Court thus determined that a jury would be "permitted to decide whether Plaintiff was sufficiently mentally ill or not for the entire period from Plaintiff's firing to the present."

August 19, 2014, Plaintiff filed an "addendum" to the motions. (Doc. No. 297.)  On September

5, 2014, Defendant filed a motion for judgment as a matter of law.  (Doc. Nos. 298–99.)

Plaintiff filed a response to Defendant's motion on September 18, 2014 (Doc. No. 302), and

Defendant responded to Plaintiff's motions on October 3, 2014 (Doc. No. 304).

### B. Legal Standard

### 1. Rule 50(b)

"If a party has been fully heard on an issue during a jury trial and the court finds that a

reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that

issue, the court may . . . resolve the issue against the party." Fed R. Civ. P. 50.  In determining

whether there was a legally sufficient evidentiary basis for the jury's conclusion, the Court must

"defer[] to the jury's assessment of the evidence and all reasonable inferences the jurors could

draw from that evidence," and "may not itself weigh the credibility of witnesses or consider the

weight of the evidence." *Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001) (internal

quotation marks omitted).  "A movant's burden in securing Rule 50 relief is particularly heavy

after the jury has deliberated in the case and actually returned its verdict." *Cross v. N.Y. City

Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005). "Under such circumstances, the district court

may set aside the verdict only where there is such a complete absence of evidence supporting the

verdict that the jury's findings could only have been the result of sheer surmise and conjecture,

or there is such an overwhelming amount of evidence in favor of the movant that reasonable and

fair minded [persons] could not arrive at a verdict against him." *Id.* (citations, alterations, and

internal quotation marks omitted).

### 2. Rule 59

Federal Rule of Civil Procedure 59 provides that a Court may order a new trial "for any

reason for which a new trial has heretofore been granted in an action at law in federal court."

Fed. R. Civ. P. 59(a)(1)(A). Granting a new trial is appropriate where "the jury has reached a seriously erroneous result or its verdict is a miscarriage of justice." *Nimely v. City of N.Y.*, 414 F.3d 381, 392 (2d Cir. 2005) (internal quotation marks and citations omitted). "Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict. Moreover, a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998).

## II. DISCUSSION

### A. Plaintiff's Motions

In support of his motion for judgment as a matter of law or, in the alternative, for a new trial, Plaintiff argues that (1) there was no evidence supporting the limitation of Defendant's liability to 12 weeks of back pay; (2) the Court's instructions to the jury were legally deficient; (3) the Court erroneously excluded certain evidence Plaintiff attempted to present and erroneously admitted certain evidence presented by Defendant; (4) the Court should have severed Plaintiff's claims and appointed a medical expert; (5) testimony of some of Defendant's witnesses was unreliable and biased; (6) there was insufficient evidence that the restaurant closed when Defendant asserted it closed; and (7) the amount of punitive damages awarded was unreasonable and insufficient. These objections will be considered in turn.

### 1. Sufficiency of Evidence

Plaintiff first objects that the jury's verdict was "the result of sheer surmise and conjecture," and that the jury could not reasonably have concluded that only 12 weeks of Plaintiff's unemployment was caused by Defendant. (Doc. No. 288 ("Plaintiff's Brief" or "Pl. Br.") at 3.) He asserts that the jury's verdict was premised on a determination that Plaintiff was suffering from mental illness, even though Defendant "did not present a scintilla of evidence"

4

regarding Plaintiff's disability. (*See id.*; *see also* Doc. No. 297 ("Plaintiff's Supplementary Brief" or "Pl. Supp. Br.") at 8–21.)

The Court declines to overturn the jury's determination that Defendant is liable for only 12 weeks of Plaintiff's unemployment. Contrary to Plaintiff's assertions, Plaintiff's inability to work due to mental illness was *not* the only defense asserted by Defendant at trial; Defendant also argued that Plaintiff did not reasonably attempt to mitigate his damages despite the availability of similar work elsewhere. Having carefully reviewed the trial record, the Court concludes that there was sufficient evidence to support each argument. Specifically, with respect to Defendant's defense regarding Plaintiff's failure to mitigate, Defendant presented evidence showing that Plaintiff was well-qualified to obtain employment as a busboy, and that there were many jobs available for someone with those skills during the relevant time period. (*See, e.g.*, Trial Transcript dated July 22, 2014 (Doc. No. 295 ("July 22 Tr.")) at 192:11–21; Trial Transcript dated July 21, 2014 (Doc. No. 293 ("July 21 Tr.")) at 88:15–90:13.) From this, the jury could reasonably have inferred that if Plaintiff had attempted to mitigate his damages, he would have found a job within 12 weeks of unemployment. Additionally, with respect to Defendant's assertion that Plaintiff's mental illness prevented him from working, Defendant introduced statements previously made by Plaintiff in this very litigation and elsewhere in which Plaintiff admitted to being mentally ill and disabled. (*See* July 22 Tr. at 195:23–210:11.) Indeed, in one of the court filings Defendant introduced, Plaintiff stated, "According to my psychiatrist and psychotherapist, this serious mental impairment will last long before I will be able to recover completely, which constitutes another impediment in finding and maintaining any suitable employment. It is unclear when I will be able to find and maintain suitable employment in the future." (July 22 Tr. at 199:14–19.) Accordingly, the Court finds that there was enough

evidence in the record for the jury to conclude that Defendant was not responsible for more than 12 weeks of Plaintiff's unemployment.

### 2. Erroneous Jury Instructions

Plaintiff also argues that he is entitled to judgment as a matter of law or a new trial on the basis of the instructions the Court read to the jury regarding mental illness. For the reasons that follow, the Court concludes that the challenged jury instructions were not erroneous and that Plaintiff is not entitled to a new trial on this basis.

### a.  ADA or SSA Standard

Plaintiff first argues that the Court mis-instructed the jury with respect to whether he was disabled by failing to require the jury to rely on the definition of disability set forth in either the Americans with Disabilities Act or the Social Security Act. (Pl. Br. at 9.) However, the issue before the jury was not whether the Social Security Administration would find Plaintiff to be disabled or whether he would have a claim under the Americans with Disabilities Act. Rather, because back pay is meant to compensate Plaintiff "only for losses suffered *as a result of*" Defendant's conduct, the relevant inquiry was whether "Plaintiff would have been unable, due to an intervening disability, to continue employment." *Thornley v. Penton Pub., Inc.*, 104 F.3d 26, 31 (2d Cir. 1997) (emphasis added). The relevant issue is one of causation, and whether Plaintiff suffered a mental disability severe enough that it prevented him from finding or maintaining work was a question of fact for the jury, irrespective of whether he would be found disabled under the SSA or ADA.

### b.  Disability Based on Stay in Homeless Shelter

Plaintiff next argues that the Court improperly failed to instruct the jury that "Defendant's allegation or misperception that Plaintiff has been mentally ill is based upon the latter's stay in a mental health shelter." (Pl. Br. at 9.) Of course, this proposed instruction is an

6

assertion of fact, not a statement of law. As such, the Court properly declined to give such an instruction to the jury, and there is no support for this objection.

### c. Evidentiary Basis for Mental Illness Determination

Plaintiff next argues that the Court should have instructed the jury that (1) "staying in a mental health shelter is not necessarily evidence of being mentally ill or suffering from an addiction to narcotics or alcohol," and (2) "evidence of mental disability or failure to mitigate damages should be supported by relevant, competent, and admissible evidence." (Pl. Br. at 9.) As to the first objection, the Court finds that the instructions it actually gave regarding mental illness were not erroneous, as the Court clarified that the "issue is whether [Plaintiff] suffered from a mental illness sufficiently severe or debilitating that it prevented him from finding or maintaining work," and *not* simply "whether Plaintiff is or has been mentally ill." (July 22 Tr. at 244:5–9.) As to the second objection, the Court properly instructed the jury that it "must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the Defendant has satisfied its burden of proving that the Plaintiff suffered from a sufficiently serious mental illness." (July 22 Tr. at 245:10–14.) Since the Court repeatedly instructed the jurors that they must base their verdict solely on the evidence admitted at trial (*see, e.g.*, July 22 Tr. at 230:25–231:4; *id.* at 231:21–23), there was no need to give a superfluous instruction such as the one proposed by Plaintiff. Accordingly, Plaintiff is not entitled to a new trial on the basis of the Court's instructions to the jury.

### 3. Evidentiary Errors

Plaintiff also objects to a number of the Court's evidentiary decisions. Specifically, he objects to (a) the Court's exclusion of unemployment benefits records; (b) the Court's exclusion of a Department of Labor ("DOL") report, court documents, and certain adjudicative findings by

state agencies; and (c) the Court's admission of Plaintiff's medical records and submissions to the Court.

### a. Plaintiff's Unemployment Records

Plaintiff first objects to the Court's exclusion of Plaintiff's documents indicating receipt of unemployment benefits, which he sought to enter into evidence in support of his claim that he was "ready, willing, and able to work." (Pl. Br. at 8–9.)  At the final pre-trial conference, the Court excluded this exhibit, noting that "whether the [New York State] Department of Labor thought that Mr. Azkour was looking for work is [not] relevant to this issue," which is properly reserved for the jury. (*See* Transcript of Proceedings dated July 17, 2014 (Doc. No. 307 ("Pretrial Conference Transcript")) at 23:11–18.)  The Court sees no reason to modify that conclusion today.  The determination of whether mental disability prevented Plaintiff from finding or maintaining a job was a question of fact for the jury, and the mere fact that the New York State Department of Labor issued Plaintiff unemployment checks following his termination is not relevant to that inquiry.  In any event, Plaintiff informed the Court at the final pre-trial conference that he was not calling any witnesses or testifying during his case-in-chief (*see* Pretrial Conference Transcript at 42:13–15); since the statements of receipt of unemployment benefits were not certified copies of public records, and thus were not self-authenticating, Plaintiff had no means of admitting the exhibit into evidence.  Accordingly, the Court's evidentiary ruling with respect to Plaintiff's unemployment records was neither erroneous nor reason to grant Plaintiff judgment as a matter of law or a new trial.

### b. DOL Documents

Plaintiff next objects to the Court's exclusion of a collection of documents Plaintiff received from the United States Department of Labor.  The Court excluded these documents because they are not self-authenticating under Federal Rule of Evidence 902, and Plaintiff had no

witness to authenticate them. The Court affirms this decision, and finds that the exclusion does not warrant judgment as a matter of law in Plaintiff's favor or a new trial.

### c. Defendant's Evidence

Plaintiff also objects to the Court's decision to admit into evidence certain of Plaintiff's medical records offered by Defendant in support of its defense that Plaintiff's mental disability caused his failure to obtain or maintain employment. (Pl. Br. at 20–30.) It should be noted that the medical records at issue were previously submitted by Plaintiff himself in support of his motion for the Court to appoint a guardian ad litem for him in the related action. *Azkour v. Haouzi, et al.*, No. 11-cv-5780 (RJS) (KNF) (S.D.N.Y.) (the "Civil Rights Action") (Doc. Nos. 24–25, 68). In that motion, Plaintiff stated that "[t]he records accompanying the . . . motion, which are issued by mental health professionals licensed by the State of New York, indicate that Plaintiff is incompetent." (Civil Rights Action, Doc. No. 24, at 4.) He again appended medical record exhibits to his renewed motion for a guardian ad litem, citing the records for the proposition that he "suffers severely from Post Traumatic [*sic*] Stress Disorder and Major Depression Disorder and will not be able to prosecute any further in the present action, like a competent pro se plaintiff." (Civil Rights Action, Doc. No. 68, at 3.)

As he did at trial, Plaintiff objects to these exhibits on the basis that they are hearsay. (Pl. Br. at 21–25.) However, as the Court previously found, they are *not* hearsay, since they are statements of an opposing party pursuant to Rule 801(d)(2). (*See, e.g.*, July 22 Tr. at 168:11–15 ("THE COURT: He's introducing them as your statements. You made statements in certain documents to the Court, and you attached documents that you adopted as in essence your statements. You adopted the facts contained in those attachments."); *id.* at 205:9–12 ("THE COURT: Again, this is a document that was filed by the Plaintiff. And so, it may be considered by you [the jury] as a statement of the Plaintiff and you can give it such weight as you deem it is

9

worthy of.").)   For the same reasons articulated previously, the Court concludes that the exhibits were properly admitted under Rule 801(d)(2) as admissions of Plaintiff.  *See Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 488 n.794 (S.D.N.Y. 2014) ("This statement was admissible against defendants as an adoptive admission by virtue of their submission of his declaration in support of their motion for leave to call him as a witness."); *see also Attorney Gen. of U.S. v. Irish N. Aid Comm.*, 530 F. Supp. 241, 252 (S.D.N.Y. 1981), *aff'd*, 668 F.2d 159 (2d Cir. 1982) (finding that "statements in letters written *to* [Defendant], that were specifically adopted or incorporated by reference in [Defendant's] reply," were admissions (emphasis added)).[2]

### 4.  Severing Trial and Appointing Expert

Plaintiff also moves a new trial based on the Court's denials of his requests for a separate trial on the issue of Plaintiff's alleged mental disability and for the appointment of an expert on mental disability.  Plaintiff notes that pursuant to Federal Rule of Civil Procedure 42(b), the Court has the authority to order separate trials on different issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize."  Fed. R. Civ. P. 42(b).  However, he has identified no basis for arguing that he was prejudiced by the Court's decision to try the case as one proceeding, and the Court finds that splitting the issues into two proceedings would not have expedited or economized this litigation.  Accordingly, Plaintiff is not entitled to a new trial based on the Court's denial of his motion for a separate trial on the issue of his alleged mental illness.

---

[2] Plaintiff also challenges the Court's rejection of his own attempts to offer into evidence other documents related to his mental health at trial.  (Pl. Br. at 22 & n.10.)  He argues that if the Court was going to admit Defendant's exhibits into evidence, then these other records – which are not contemporaneous with or related to the motion or renewed motion for the appointment of a guardian ad litem – should have been admitted as well because "[n]otwithstanding the fact that they are equally inadmissible, the [other medical records] would have been more favorable to Plaintiff."  (*Id.* at 22.)  This once again ignores the text and purpose of Rule 801(d)(2), and the fact that in order for a statement to be admissible as the statement of a party opponent, it must be a statement *of the opponent.*  Fed. R. Evid. 801(d)(2).  Plaintiff cannot admit his own statements, or the statements of third party medical providers, into evidence pursuant to this Rule.

Similarly unavailing, for the reasons previously set forth at the final pre-trial conference, is Plaintiff's objection to the Court's denial of his motion for the appointment of an expert under Rule 706. (*See* Pre-trial Conference Transcript at 9:3–103.) "The determination to appoint an expert [witness] rests solely in the Court's discretion and is to be informed by such factors as the complexity of the matters to be determined and the Court's need for a neutral, expert view." *Eldridge v. Williams*, 10-cv-0423 (LTS) (RLE), 2012 WL 1986589, at *1 (S.D.N.Y. June 1, 2012). "Where no complex, highly technical litigation exists, appointing an expert witness, pursuant to Rule 706, should generally be denied." *Gioconda Law Grp. PLLC v. Kenzie*, No. 12-cv-4919 (JPO) (KNF), 2013 WL 2389791, at *2 (S.D.N.Y. May 31, 2013). Accordingly, the Court declines to grant Plaintiff a new trial based on the Court's denial of Plaintiff's motion for the appointment of an expert. Plaintiff was certainly free to notice and seek expert discovery and testimony; he himself was also free to testify on this and other issues. That he chose not to do so was his prerogative, but it can hardly be considered error for the Court not to intervene and appoint a neutral expert in this adversarial proceeding.

### 5. Reliability and Bias of Defendant's Witnesses

Plaintiff further objects that testimony from all of Defendant's witnesses – Jessica Comperiati, Panayiotis Boyiakis, and Franck Maucort – was improperly received because the witnesses lacked personal knowledge regarding the subject matter of their testimony and were unreliable. Plaintiff did not object to this testimony at trial, and so has waived any objections. In any event, in his post-trial briefing he mischaracterizes the record and the evidence adduced at trial.[3] The witnesses were not asked hypothetical questions, as Plaintiff asserts, and indeed

---

[3] For example, Plaintiff asserts that Ms. Comperiati testified that "*no* employer would require an applicant to present a professional reference letter from his/her former employer if he/she applies for a busboy position," and argues that such testimony was "highly incredible, unverifiable, unbelievable, and untrue, especially in New York City." (Pl. Br. at 40 (emphasis added).)

testified solely based on their personal knowledge. Plaintiff's arguments go to the credibility of the witnesses and the weight Plaintiff thinks their testimony should have been given by the jury; the Court will not disturb the jury's reasonable findings in this respect. *See Toporoff Eng'rs, P.C. v. Fireman's Fund Ins. Co.*, 371 F.3d 105, 108 (2d Cir. 2004). Plaintiff's objections regarding the testimony of Defendant's witnesses must therefore fail.

### 6. Evidence of Restaurant Closing

Plaintiff's supplemental post-trial submission focuses in large part on the supposed lack of evidence supporting the closure of the restaurant in March 2013. (Pl. Supp. Br. at 3–6.) However, Plaintiff simply asserts that Defendant failed to carry its burden regarding its defense of the restaurant closing, and does not object to any of the Court's evidentiary rulings on the subject beyond a vague reference to a lack of personal knowledge on the part of the testifying witnesses. After reviewing the evidence, the Court concludes that there was sufficient evidence for the jury to conclude that the restaurant closed on March 15, 2013. Specifically, Frank Maucort testified that he used to work at the restaurant in question, but left when it closed, in March 2013. (July 21 Tr. at 115:18–116:1.)

In any event, even if Maucort did lack personal knowledge as to whether the restaurant closed, any error on the subject would be harmless, since the jury found that Defendant was the proximate cause of 12 weeks of Plaintiff's employment – *i.e.*, from the date of his termination until 12 weeks later, or May 2010. Because the closure of the restaurant occurred nearly three

---

However, the Court finds that at no time did Ms. Comperiati opine as to industry norms or the practices of other restaurants regarding inquiry into employment history for hiring purposes. In fact, when Ms. Comperiati was asked on direct examination how long it would typically take "for someone [with Plaintiff's characteristics] to obtain a minimum-wage tipped position in New York" – the only question remotely related to Plaintiff's argument – the Court sua sponte found that the question "seem[ed] to call for expert testimony," directed the witness not to answer, and guided the questioning back to subject matter about which the witness had personal knowledge. (July 21 Tr. at 83:4–16.)

years later, on March 15, 2013, it clearly could not have been relevant to the jury's determination of back pay. The Court thus declines to grant Plaintiff judgment as a matter of law or a new trial based on the asserted insufficiency of the evidence regarding the restaurant closing.

### 7. Sufficiency of Punitive Damages

Plaintiff also objects to the sufficiency of the punitive damages awarded by the jury, arguing that the award was "highly speculative, unfair, unreasonable, unpredictable, and disproportionately insignificant." (Pl. Br. at 13.) Because the Court finds that there was not sufficient evidence for the jury to award punitive damages in the first place, *see infra* Part II.B.2, the Court denies Plaintiff's motion for judgment as a matter of law for additional punitive damages or a new trial.

### B. Defendant's Motion

Defendant moves for judgment as a matter of law pursuant to Rule 50(b) on Plaintiff's claims for back pay and punitive damages. (*See generally* Doc. No. 299 ("Defendant's Brief" or "Def. Br.").) Specifically, Defendant argues that "there was a complete lack of evidence supporting the jury's verdict that defendant was responsible for twelve (12) weeks of [P]laintiff's post-discharge employment," and that "[P]laintiff failed to establish by a preponderance of the evidence that he is entitled to *any* award of punitive damages from defendant." (*Id.* at 4 (emphasis in original).) For the reasons set forth below, Defendant's motion is granted in part and denied in part.

### 1. Back Pay

With respect to the jury's award of 12 weeks of back pay to Plaintiff, Defendant argues that the verdict cannot stand because a "plaintiff has some initial burden to show that he made a reasonable attempt to look for employment," and Plaintiff here did not put on a case and thus did not carry that initial burden. (Def. Br. at 5.) However, this argument misstates the law of this

Circuit regarding the burden of demonstrating mitigation, or the lack of mitigation. Specifically, the Second Circuit has repeatedly held that it is the *defendant* who bears the burden with respect to a lack of mitigation or inability to work. *See, e.g.*, *Broadnax v. City of New Haven*, 415 F.3d 265, 268 (2d Cir. 2005); (*see also* Doc. No. 229 (Defendant's proposed jury instructions, acknowledging Defendant's burden of establishing failure to mitigate or inability to work due to mental illness)). Thus, Plaintiff does *not* have the initial burden that Defendant asserts he has. Indeed, the Second Circuit case cited by Defendant for the proposition that Plaintiff has this "initial burden" suggests no such thing. (Def. Br. at 5); *see Dailey v. Societe Generale*, 108 F.3d 451, 456 (2d Cir. 1997) ("While it is the plaintiff's duty to mitigate, it is the defendant who has the evidentiary burden of demonstrating at trial that a plaintiff has failed to satisfy this duty."); *see also Broadnax*, 415 F.3d at 268 ("[I]t is the employer, not the employee, who bears the burden on the issue of effort to seek employment."). Plaintiff accordingly had no burden to carry regarding mitigation. Thus, absent evidence from Defendant that Plaintiff failed to mitigate or suffered from a disability rendering him unable to work, Plaintiff would have been entitled to back pay from February 2010 to the present.

Here, the Court finds that the jury could have reasonably concluded that Defendant was responsible for 12 weeks of Plaintiff's unemployment. Although Defendant's witnesses testified that there were ample employment opportunities available to a person seeking a busboy position during the period from 2010 until the present (*see, e.g.*, July 21 Tr. at 88:15–90:13), the jury also heard testimony from Plaintiff's deposition, in which Plaintiff repeatedly asserted that he had actively searched for a job (*see* July 21 Tr. at 142:9–149:20). Additionally, the trial record made clear that Plaintiff earned $838.68 per week prior to his termination (July 21 Tr. at 62:12–13), and the jury reasonably could have concluded that finding a comparable position with

14

comparable wages would take as long as 12 weeks. *See, e.g., Clarke v. Frank*, 960 F.2d 1146, 1152 (2d Cir. 1992) ("The claimant need not accept employment that is not comparable to his previous position."); *Wills-Hingos v. Raymond Corp.*, 104 F. App'x 773, 776 (2d Cir. 2004) (employment opportunities at "significantly lower wages" not substantially equivalent for purposes of mitigation); *see also Broadnax*, 415 F.3d at 270 ("Judgment as a matter of law on an issue as to which the movant bears the burden of proof is rare." (internal quotation marks omitted)). Accordingly, the Court will "defer[] to the jury's assessment of the evidence and all reasonable inferences the jurors could draw from that evidence," *Meloff*, 240 F.3d at 145 (internal quotation marks omitted), and sees no reason or basis to second-guess the jury with regard to this determination.

### 2. Punitive Damages

Defendant also seeks judgment as a matter of law on Plaintiff's claim for punitive damages. (Def. Br. at 7.) Unlike the issue of back pay, Plaintiff had the burden of proof at trial for punitive damages, and although Plaintiff did not put on a case or present any evidence, the jury awarded him $50,000 in punitive damages for the retaliatory termination he suffered at Defendant's hands. As set forth below, the Court concludes that Plaintiff did not carry his burden, and that judgment as a matter of law must be granted in Defendant's favor with respect to punitive damages.

In order for a plaintiff to qualify for punitive damages under the FLSA, he must prove that the defendant has discriminated or retaliated "and has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Caravantes v. 53rd St. Partners, LLC*, No. 09-cv-7821 (RPP), 2012 WL 3631276, at *25 (S.D.N.Y. Aug. 23, 2012) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 530 (1999)). While this is the standard for Title VII claims pursuant to 42 U.S.C. § 1981a(b)(1), § 1981a essentially incorporates the

Supreme Court's standard for punitive damages under § 1983. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999) (citing *Smith v. Wade*, 461 U.S. 30 (1983)). Thus, the Court agrees with what appears to be the only other federal court opinion to consider the standard for punitive damages under the FLSA and concludes that the § 1981a(b)(1) standard also applies here. *See Randolph v. ADT Sec. Servs., Inc.*, 09-cv-1790 (DKC), 2012 WL 2234362, at *4 & n.6 (D. Md. June 14, 2012) (applying § 1981a(b)(1) standard to FLSA punitive damages); *see also Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 471 n.19 (S.D.N.Y. 2008) ("Both Title VII and the FLSA are remedial statutes whose effectiveness depends on the employee's ability to bring claims thereunder with impunity. Thus, the same basic analysis applies to retaliation claims under either statute.").

Under this standard, while punitive damages depend on Defendant's knowledge (or reckless indifference), the required knowledge with regard to the retaliatory termination is *not* simply a knowledge of a retaliation. Rather, the requirement of knowledge or reckless indifference "pertain[s] to the employer's knowledge that it may be acting in violation of federal law." *Farias v. Instructional Systems Inc.*, 259 F.3d 91, 102 (2d Cir. 2001). Thus, in order to qualify for punitive damages, Plaintiff here must "present evidence that the employer . . . retaliated . . . against him with conscious knowledge it was *violating the law*, or that it engaged in egregious or outrageous conduct from which an inference of malice or reckless indifference could be drawn." *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 573 (2d Cir. 2011) (emphasis added) (internal quotation marks omitted); *cf. Kolstad*, 527 U.S. at 536–37 ("There will be circumstances where intentional discrimination does not give rise to punitive damages liability under this standard. In some instances, the employer may simply be unaware of the relevant federal prohibition. There will be cases, moreover, in which the employer

discriminates with the distinct belief that its discrimination is lawful."). "[I]n the absence of evidence showing that the employer acted with malice or reckless indifference to its employee's federally protected rights, a punitive damages award cannot be sustained." *Tepperwien v. Entergy Nuclear Operations, Inc.*, 07-cv-433 (CS), 2010 WL 8938797, at *11 (S.D.N.Y. Mar. 16, 2010), *aff'd*, 663 F.3d 556 (2d Cir. 2011).

Here, the Court finds that no evidence was adduced at trial from which the jury could reasonably have inferred that Defendant retaliated against Plaintiff "with malice or with reckless indifference to [his] federally protected rights." *Kolstad*, 527 U.S. at 548. Indeed, no evidence related to the circumstances of the retaliation was introduced at trial *at all*. Based on the summary judgment order in Plaintiff's favor (Doc. No. 98) and the parties' stipulation (July 22 Tr. at 236:9–19), the Court informed the jury in its charge that "Plaintiff complained to Defendant and the Department of Labor that he was not being paid properly, and in retaliation for those complaints, Defendant fired him." (July 22 Tr. at 236:15-18.) However, the jury was not presented with any evidence from which an inference of malice or reckless indifference could be drawn. Plaintiff did not put on a case, so the only evidence that reached the jury was that introduced by Defendant. Having carefully reviewed the trial record, the Court finds that none of this evidence had any relationship to Plaintiff's termination or the complaint he filed with the DOL, or to Defendant's understanding of Plaintiff's rights.[4] Accordingly, Defendant

---

[4] The Court advised Plaintiff at least twice before trial that by not testifying, calling any witnesses, or otherwise presenting any evidence, he would likely not be able to carry his burden with respect to punitive damages. (*See* Pre-trial Conference Transcript at 42:13–17 ("THE COURT: Well, I mean, look, are you, yourself, intending to testify? MR. AZKOUR: I'm not going to testify. THE COURT: No. So I'm not sure how you're going to be able to meet your burden with respect to punitive damages."); *id*. at 43:18–21 ("THE COURT: [I]f you're not going to be calling any witnesses, then it seems to me I'd be giving probably a directed verdict on punitives because that's your burden.").)

shall be granted judgment as a matter of law with respect to Plaintiff's claim for punitive damages.

### C. Damages Calculation

At trial, the jury found Defendant liable for 12 weeks of Plaintiff's unemployment. Based on a weekly wage of $838.68, Plaintiff is entitled to $10,064.16 in compensatory damages. Additionally, Plaintiff is entitled to liquidated damages under the FLSA. (*See* Doc. No. 187); *see also* 29 U.S.C. § 216(b).[5]  Pursuant to 29 U.S.C. § 216(b), Plaintiff's FLSA liquidated damages shall be in an amount equal to the compensatory damages awarded, and thus he will receive an additional $10,064.16. Finally, although the Second Circuit has left up to the sound discretion of district courts whether or not to deduct unemployment benefits from an award for back pay, *see Dailey*, 108 F.3d at 460, the Court sees no reason to depart from the majority rule in this case and concludes that unemployment benefits should not be deducted.[6] Plaintiff's total damages are thus $20,128.32.

---

[5] Plaintiff is not entitled to liquidated damages under the anti-retaliation provision of the New York Labor Law. The current version of N.Y.L.L. § 215, which dictates penalties for retaliation, includes a provision for liquidated damages of up to $10,000. However, prior to the enactment of the New York Wage Theft Prevention Act ("WTPA") – which had an effective date of April 9, 2011 – liquidated damages were not available under § 215. Because the WTPA was not meant to be applied retroactively, *see, e.g.*, *Eschmann v. White Plains Crane Serv., Inc.*, No. 11-cv-5881 (KAM) (VVP), 2014 WL 1224247, at *12 (E.D.N.Y. Mar. 24, 2014); *Maldonado v. La Nueva Rampa, Inc.*, No. 10-cv-8195 (LLS) (JLC), 2012 WL 1669341, at *9 (S.D.N.Y. May 14, 2012); *Chenensky v. New York Life Ins. Co.*, No. 07-cv-11504 (WHP), 2012 WL 234374, at *3 (S.D.N.Y. Jan. 10, 2012), the Court applies the version of the statute in effect at the time of the conduct underlying this action, and finds liquidated damages unavailable.

[6] *See Shannon v. Fireman's Fund Ins. Co.*, 136 F. Supp. 2d 225, 232 (S.D.N.Y. 2001) ("[B]ecause unemployment benefits are paid by a state agency rather than by [employer] directly, either [employee] or [employer] will receive this 'windfall' no matter how the benefits are treated.  In short, fairness dictates that the 'windfall' be awarded to the victim of the discrimination rather than the perpetrator.").

III. CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED THAT Plaintiff's motion for judgment as a matter of law or, in the alternative, for a new trial, is DENIED, and Defendant's motion for judgment as a matter of law is DENIED as to back pay and GRANTED as to punitive damages. IT IS FURTHER ORDERED THAT Plaintiff has judgment against Defendant in the amount of $20,128.32, constituting post-termination back pay of $10,064.16, and liquidated damages under the FLSA in the same amount.

SO ORDERED.

Dated:      February 11, 2015
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

A copy of this Order has been sent to:

Hicham.azkour@gmail.com