UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

**HICHAM AZKOUR**,

*Plaintiff,*

v.

**LITTLE REST TWELVE, INC.**

*Defendants.*

**Civil Action No. 10-CV-4132 (RJS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/30/15

---

**PLAINTIFF'S MOTION TO COMPEL DISCLOSURE OF DEFENDANT'S ASSETS, ENFORCE COURT JUDGMENT, AND FOR ATTACHMENT OF DEFENDANT'S ASSETS**

---

HICHAM AZKOUR, pro se
93 Pitt Street, Apt. 3B
New York, New York 10002

Telephone: (917) 859-6550
Email: hicham.azkour@gmail.com

1

On March 27, 2015, Defendant submitted a letter to the Court stating that it would not satisfy the judgment, <u>Docket Entry No. 318</u>, as long as Plaintiff's appeal is pending with the U.S. Court of Appeals for the Second Circuit ("Second Circuit"). *See* <u>Docket Entry No. 332</u>. This Court is informed that neither Defendant nor Plaintiff appeal from said judgment. To justify its untenable position, which is not supported by any law, Defendant argues that, in lieu of the proper *supersedeas* bond, as prescribed by Fed. R. Civ. P. 62(d), it seeks to deposit the judgment amount with Court's Registry pursuant to the Fed. R. Civil P. 67(a). Defendant further justifies its refusal to satisfy said judgment by its concern that it is not guaranteed it would recoup the monies if the jury reached a verdict denying back pay to Plaintiff in a new trial.

First of all, Defendant does not assert on what ground it is confident that the Second Circuit will remand the case for a new trial. Second, even if the case is remanded for a new trial, as Defendant speculates or wishes, any attempt to claim that Plaintiff should not be awarded back pay will be *estopped* by Defendant's failure to appeal from the judgment. Third, it is not clear why Defendant did not consider the *other scenario* where a jury would reach a verdict awarding Plaintiff his full back pay, front pay, federal liquidated damages, New York liquidated damages, and punitive damages.

Obviously, this would become a nightmare for Defendant. However, such a scenario, of course, is not a remote possibility and would require that Plaintiff request from Defendant to deposit a judgment amount *substantially greater* than the one proposed by Defendant's counsel in his March 26, 2015 letter.

2

Considering the speculative aspect of the judgment amount, which may be the result of the new trial, as reasoned and expected by Defendant, it is fair to say that Defendant's proposed deposit would not be a warranty sufficient enough to satisfy any prospective, hypothetical judgment. And this warrants Plaintiff's requests to compel disclosure and attachment of Defendant's assets pending the appeal and, for that matter, any future trial. Therefore, any action by this Court permitting Defendant to *untimely* deposit an amount of *only* $22,343.00, merely for the purpose of allowing it to avoid cross-appeal and, thence, flout its duty to satisfy the judgment and, at the same time, deny Plaintiff's request for a more substantial deposit to satisfy any future judgment would be an action lacking the least indicia of even-handedness towards Plaintiff. In all truth, in the absence of any legitimate purpose to Defendant's proposed untimely and insufficient deposit, any decision by this Court in Defendant's favor will not be permissible and will abridge Plaintiff's substantive right to satisfy a judgment in a action where he clearly prevailed.

Naturally, Plaintiff's argument, as articulated above, is the logically expected response to Defendant's failed argument in its March 27, 2015 letter, without even discussing whether its argument is legally permissible or substantiated. Although, Plaintiff's argument does not address the appropriate standard governing security pending appeal, it has shown, nonetheless, that Defendant's reasoning is flawed and does not serve any objective purpose. Additionally, if one ought to address Defendant's illogical argument based on the Order at <u>Docket Entry No. 187</u>, from which Plaintiff has appealed, it goes without saying that Defendant, according to its twisted logic, should also

consider the possibility where it will not be able to recoup the partial judgment amount of $16,572.78. *See* Docket Entry No. 284. In light of its unfounded theory, Defendant should require that Plaintiff deposit an amount of 18,395.78 as a 111% security deposit pending the Second Circuit decision as to whether this Court erred in awarding Plaintiff $16,572.78 in wages, gratuities, and liquidated damages.

Defendant's irrational position is a miserable, arm-twisting exercise. And with the Court's inaction and benediction, as Plaintiff will demonstrate below, it is now clear that it aims at dissuading Plaintiff from freely pursuing his appeal. But the politics of compulsion does not reflect highly on the independence of justice.

As Plaintiff/Creditor argued in a previous submission to the Court, Defendant's request to deposit the judgment amount *without first filing a timely notice of appeal* is inappropriate. In the absence of an appeal from the judgment or from the amount of the judgment, Defendant's request is meaningless, whether pursuant to Fed. R. Civ. P. 67(a) or otherwise, and should be denied by this Court. In this context, posting a *supersedeas* bond *was* the only appropriate means to stay judgment. Defendant/Debtor, in his letters dated March 26 and March 27, 2015, failed to demonstrate why this Court should waive such a requirement.

As this Court is aware, Fed. R. Civ. P 62(d) permits a stay as of right when an appellant[1] posts a *supersedeas* bond. See *Frommert v. Conkright*, 639 F. Supp. 2d 305, 308

---

[1] Little Rest Twelve, Inc. is not an *appellant* because it did not file a timely notice of appeal and, thus, this Court is without jurisdiction to stay the judgment at Docket Entry No. 318. The Court

4

(W.D.N.Y. 2009) (citations omitted). "[T]he court has no discretion to deny the stay itself, but only to fix the amount of (or to waive) the bond." *Id.* (citations omitted). Under certain circumstances, in its discretion, a court can grant a stay without requiring the posting of a *supersedeas* bond. However, courts customarily require the *appellant* to post a bond in cases where a stay of judgment is granted, see *Liberty Mut. Ins. Co. v. Bankers Trust Co.*, 769 F. Supp. 130, 131 (S.D.N.Y. 1991); and it is the moving party's burden to provide specific reasons why a court should depart from this standard, see *Dotson v. City of Syracuse*, No. 5:04-CV-1388, 2011 WL 817499, *23 (N.D.N.Y. Mar. 2, 2011) (quotation omitted). The *supersedeas* bond is generally for the full amount of the judgment. *See id.*; see also *Jimico Enters., Inc. v. Lehigh Gas Corp.*, No. 1:07-CV-0578, 2011 WL 4594141, *6 (N.D.N.Y. Sept. 30, 2011) (citations omitted).

Although a district court can order a reduced bond, or no bond at all, in cases where the judgment creditor's ability to collect on the judgment is reasonably secure, see *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1155 (2d Cir. 1986), rev'd on other grounds, 481 U.S. 1 (1987) (citation omitted), this case does not present sufficient unique circumstances to warrant the Court's departure from the usual requirement that a court will grant an appellant a stay *only* upon its posting of a *supersedeas* bond in the full amount of the judgment. See *Pugach v. M & T Mortg. Corp.*, No. 2:05-cv-02498, 2008 WL 2640465, *2 (E.D.N.Y. July 3, 2008).

Here, Defendant/Debtor did not appeal from the judgment by filing a timely

---

may note that neither party appealed from the judgment. *See* Plaintiff's notice of appeal at Docket Entry No. 319. The statutory language of Rule 62(d) is unambiguous and gives the Court the discretion to stay the judgment only when "appeal is taken."

5

notice of appeal. As a result, this Court is without jurisdiction to stay the judgment. Yet, Defendant acts like if it has prevailed in this matter and unabashedly demands from the Court that the judgment be stayed and *supersedeas* bond be waived. In addition, Defendant's argument further suggests that there is no need for Plaintiff to question its solvency and request disclosure of its assets, albeit a writ of execution already issued on March 16, 2015. *See* Docket Entry No. 330. This is simply an outrageous conduct and any ruling or inaction by the Court condoning such conduct will be highly improper. Moreover, both the Court's silent deferral and denial of Plaintiff's multiple requests to urgently act on Defendant's disobedient conduct are not supported by any law and cannot go unnoticed.

Although the Court appears to be fully undisturbed by the issuance of the writ of execution and Defendant's refusal to fully disclose its assets, there is no evidence that Defendant is solvent and will be able to satisfy any future judgment, whether in this action or any other related matter.

There is no proper explanation as to this Court's illegitimate inaction in promptly deciding Plaintiff's post-judgment requests but the belief that it has received information regarding Defendant's solvency from outside sources – information which is not based on any admissible evidence presented to the Court by Defendant and which has not been shared with Plaintiff. Except for allusive and furtive representations to this Court that Defendant is owned by a wealthy individual from the Republic of Georgia, *see April 17, 2014 Conference Transcript*, 9:24 -10:23 at Docket Entry No. 320, there is not a single shred of evidence in the record pointing to the fact that Defendant is solvent, *as a New York*

6

*corporation*, or that it did not engage in a fraudulent conveyance to avoid satisfaction of judgments in the United States court. *See* Plaintiff's request for attachment at <u>Docket Entry No. 203</u>. In fact, Defendant's refusal to amend the disclosure statement at <u>Docket Entry No. 24</u> is nothing but clear evidence that there has been a fraudulent conveyance. Moreover, failure to appeal is also an unambiguous sign that Defendant is avoiding to file, as required per Fed. R. App. P. 26.1, a disclosure statement that may reflect said conveyance.

In any event, this Court must not ignore Plaintiff's motions to enforce the judgment as one of Plaintiff's *established constitutional rights* in the present matter or, for that matter, ignore any other request to compel the full disclosure of Defendant's assets. Considering that a writ of execution already issued and Defendant/Debtor has refused to timely satisfy the judgment, this Court must intervene and attach and/or sequestrate its property. "When done, the act has the same effect as if done by the party." *See* Fed. R. Civ. P. 70(a) and (c). This Court must also hold disobeying Defendant/Debtor in contempt. *See* Fed. R. Civ. P. 70(e) Unless it lacks the authority to do so *because* of the pending docketed appeal, the Court should not deprive Plaintiff of his *substantive right to property*, i.e., the monetary judgment. Clearly, as set forth below, the law does not prohibit the Court from exercising its authority to afford Plaintiff his post-judgment rights. Therefore, the Court must not (1) defer considering Plaintiff's motions; (2) deny the motions; or (3) state either that it would grant the motions if the Second Circuit remands for that purpose or that the motions raise a substantial issue. *See* Fed. R. Civ. P. 62.1.

"As a general rule, once a federal court has entered judgment, it has ancillary

7

jurisdiction over subsequent proceedings necessary to vindicate its authority, and effectuate its decrees. This includes proceedings to enforce the judgment." *See Dulce v. Dulce*, 233 F.3d 143, 146 (2d Cir. 2000) (quotation marks and internal citation omitted). A federal court may exercise ancillary jurisdiction "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Peacock v. Thomas*, 516 U.S. 349, 355, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996) (citation and quotation omitted). Without ancillary jurisdiction to enforce judgments, "the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." *Peacock*, 516 U.S. at 356, 116 S.Ct. 862 (internal quotations omitted).

New York law generally supplies procedures for the enforcement of a federal court judgment. *See* Fed. R. Civ. P. 69(a) ("The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held...."). New York Civil Practice Law and Rules sections 5223 and 5224 establish discovery procedures that may be used by a judgment creditor, such as Plaintiff, seeking to obtain information necessary to enforce a judgment. Section 5223 provides: "At any time before a judgment is satisfied..., the judgment creditor may compel disclosure of all matter relevant to the satisfaction of the judgment, by serving upon any person a subpoena...." *See* N. Y. C. P. L. R. § 5223. Section 5224 provides for (1) a "subpoena requiring attendance for the taking of a deposition," (2) a "subpoena duces tecum requiring the production of books and papers," and (3) an "information subpoena"

8

requiring written answers to set of written questions. *See* N. Y. C. P. L. R. § 5224. Employing the procedures established in sections 5223 and 5224, made applicable in a federal court by Fed. R. Civ. P. 69(a), it seems clear Plaintiff/Creditor may subpoena Defendant/Debtor (and anyone else likely to have relevant knowledge) to give a full accounting of its assets.

Generally speaking, the breadth of post-judgment discovery with respect to a judgment debtor's assets affords judgment creditors considerable latitude in obtaining documents and information from non-parties. *See, e.g.,* Fed. R. Civ. P. 69(a)(2) (judgment creditor may obtain discovery from "any person"); *GMA Accessories, Inc. v. Elec. Wonderland, Inc.,* No. 07 Civ. 3219, 2012 WL 1933558, at *4 (S.D.N.Y. May 22, 2012) ("the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor.") (*quoting Costamar Shipping Co. v. Kim-Sail, Ltd.,* No. 95 Civ. 3349, 1995 WL 736907, at *3 (S.D.N.Y. Dec. 12, 1995)). Of course, a non-party's own assets are not automatically a proper subject of inquiry in post-judgment discovery, *e.g., GMA Accessories,* 2012 WL 1933558, at *5, discovery concerning a non-party's assets is permitted if the relationship between the judgment debtor and the non-party is such that the non-party may possess concealed or fraudulently transferred assets of the judgment debtor, *see Costomar Shipping Co., Ltd.,* 1995 WL 736907, at *3; *accord, Magnaleasing, Inc. v. Staten Island Mall,* 76 F.R.D. 559, 561 (S.D.N.Y. 1977). Thus, for example, in *Libaire v. Kaplan,* 760 F. Supp. 2d 288, 295 (E.D.N.Y. 2011), the court ordered a judgment debtor to disclose not only his own tax returns, but those of his corporation as well.

9

**WHEREFORE**, for the reasons set forth above, Plaintiff respectfully requests that this Court:

1. Order Defendant/Debtor to fully and immediately satisfy the judgment;

2. Enforce the judgment at <u>Docket Entry No. 318</u> pursuant to Fed. R. Civ. P. 70;

3. Authorize Plaintiff/Creditor to issue subpoenas to compel the full disclosure of Defendant/Debtor's assets;

4. Issue a writ to attach Defendant/Debtor's assets;

5. Hold Defendant/Debtor in contempt if it keeps disobeying this Court's Orders; or, in the alternative,

6. Appoint a pro bono counsel to engage in the post-judgment proceedings.

Respectfully submitted on March 30, 2015

By:   Hicham Azkour, pro se