UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HICHAM AZKOUR,

                                    Plaintiff,

        -v-                                                    No. 10-cv-4132 (RJS)
                                                               <u>OPINION & ORDER</u>

LITTLE REST TWELVE,

                                    Defendant.

<u>RICHARD J. SULLIVAN</u>, District Judge:

        The Court is in receipt of a motion from Plaintiff seeking vacatur of the judgment issued

in this matter on February 13, 2015 that was affirmed by the Second Circuit last year.  (Doc.

Nos. 349 ("Mem."), 351, 352); *see also Azkour v. Little Rest Twelve, Inc.*, 645 F. App'x 98 (2d

Cir. 2016).  For the reasons set forth below, the Court denies the motion in its entirety.

## I. BACKGROUND

        The Court assumes the parties' familiarity with the facts and procedural history of this

case, which are detailed in the numerous opinions and orders issued by judges at every level of

the federal judiciary, and recites only those facts necessary to resolve this motion.  *See, e.g.*,

*Azkour v. Little Rest Twelve, Inc.*, No. 10-cv-4132 (RJS) (KNF), 2012 WL 402049 (S.D.N.Y.

Feb. 7, 2012), *report and recommendation adopted*, No. 10-cv-4132 (RJS) (KNF), 2012 WL

1026730 (S.D.N.Y. Mar. 27, 2012); *Azkour v. Little Rest Twelve*, No. 10-cv-4132 (RJS), 2015

WL 631377, at *1 (S.D.N.Y. Feb. 12, 2015), *aff'd sub nom. Azkour v. Little Rest Twelve, Inc.*,

645 F. App'x 98 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 390 (2016), *reh'g denied*, 137 S. Ct. 716

(2017).  On May 19, 2010, Plaintiff brought this action, alleging violations of the Fair Labor

Standards Act ("FLSA") and New York Labor Law ("NYLL"), including claims for unpaid

overtime, failure to pay minimum wage, unjust enrichment, and retaliatory termination.  (Doc.

No. 1.)[1]  Plaintiff, who initially filed suit *pro se*, was represented by attorney David Stein from

January 3, 2011 until September 12, 2012, after which he again proceeded *pro se*.  (Doc. Nos.

59, 122.)

Throughout the history of this litigation, Plaintiff has frequently asserted that he "suffers

from mental impairments."  (Doc. No. 115 ¶ 22.)  In a declaration filed on June 2, 2012, Plaintiff

admitted that he "live[s] in a mental health shelter," where he is "regularly treated by

psychiatrists and psychotherapists" as a result of a "serious mental impairment."  (Doc. No. 104

¶ 26.)    In the same declaration, Plaintiff also asserted that his "serious mental

impairment . . . constitutes another impediment in finding or maintaining any suitable

employment."  (*Id.* ¶ 28.)  Similarly, on January 17, 2012, Plaintiff asserted in a filing that "I am

mentally disabled as corroborated by mental evaluations submitted to the Court."  (No. 11-cv-

5780, Doc. No. 21 at 2.)  In fact, Plaintiff twice moved in a related case for appointment of a

guardian *ad litem* based on the fact that he "suffers severely from Post Traumatic Stress Disorder

and Major Depression Disorder . . . ."  (No. 11-cv-5780 (RJS), Doc. No. 68 at 2; *see also* No. 11-

cv-5780, Doc. No. 24 ¶ 5 (Plaintiff asserting that he "suffers from mental disabilities . . .").)[2]  At

a court conference held on September 4, 2012 concerning his attorney's motion to withdraw,

Plaintiff admitted that "sometimes I suffer from some mental health conditions and this makes

me really angry sometimes.  I just can't control it and I really apologize for that."  (Doc. No. 123

at 29:20–23.)

Over the course of this litigation, Plaintiff has also sent the Court, Defendants, and his

own counsel "very disturbing and potentially threatening" correspondence.  (Doc. No. 89 at 2.)

For instance, in a bizarre letter dated January 7, 2011, Plaintiff compared defense counsel to a

---

[1] Unless otherwise noted, internal citations refer to the docket in the above-captioned FLSA case.

[2] The Honorable Kevin N. Fox, to whom the Court had referred the case for pretrial supervision and nondispositive motions, denied the motion for appointment of a guardian *ad litem* in a sealed order on August 23, 2012.  (No. 11-cv-5780, Doc. Nos. 9, 86.)

Tennessee state representative who had, in a publicly circulated video, burned a copy of the Koran. (*Id.* at 10.) In the same letter, Plaintiff stated his belief that defense counsel "should direct his clients to undergo a therapy [sic] so that they may overcome their kleptomaniac inclinations." (*Id.* at 11.) In an email, dated January 6, 2012, Plaintiff asked defense counsel whether he is "under the influence of any drugs" because he has "the audacity to complain to a federal judge while [his] client is a notorious ALI BABA." (*Id.* at 16 (emphasis in original).)

Plaintiff's behavior prompted his attorney, Mr. Stein, a highly respected member of the bar, to move to withdraw pursuant to Local Civil Rule 1.4. Mr. Stein's withdrawal was triggered in part by a bizarre and anti-Semitic screed submitted by Plaintiff on July 12, 2012, in which Plaintiff insisted that Mr. Stein "knows that Plaintiff suffers from mental impairments" and accused Mr. Stein, who is an Orthodox Jew, of "taking advantage of Plaintiff's impairments to advance his own interests and the interests of his coreligionists, [D]efendant Jean-Yves Hazoui and his counsel, Andrew S. Hoffman." (Doc. No. 115 ¶ 22.) Although Plaintiff subsequently withdrew his motion to terminate Mr. Stein, Mr. Stein indicated at a September 4, 2012 court hearing that he intended to withdraw from the case, since Plaintiff repeatedly "bombarded" him with "threats to bring criminal charges, ethical charges, [and] malpractice cases against [his] firm . . . ." (Doc. No. 123 at 8:20–22.) On September 11, 2012, Mr. Stein attached emails to his written motion *in camera* that revealed that Plaintiff frequently "voiced his disagreement[s]" with Mr. Stein "in a disrespectful, ad hominem, and often vulgar manner." (Doc. No. 122 at 2.)

Although the Court granted Mr. Stein's motion to withdraw on September 12, 2012 (*id.*), Plaintiff nonetheless later reapplied for appointment of *pro bono* counsel. In his application, dated April 7, 2014, Plaintiff argued that his "severe mental illness is the special reason why appointment of counsel" was warranted. (Doc. No. 192 at 3.) That same day, in another court filing, Plaintiff submitted a declaration in which he indicated that a nurse at his homeless shelter

3

"diagnosed [him] with Post Traumatic Stress Disorder and Major Depressive Disorder." (Doc. No. 194 at ¶ 7.)

Although these issues significantly complicated and delayed this litigation, Plaintiff eventually obtained partial summary judgment for damages, in the amounts of $9,795.94 on his wage and hour claims and $6,776.84 on his retained tips claim, for a total award of $16,572.78 on March 26, 2014. (Doc. No. 187.) Additionally, after rejecting Defendant's assertions that punitive damages were not available for an FLSA retaliation claim, the Court denied the parties' cross-motions for summary judgment on the issues of back pay and punitive damages, finding that both were questions for the jury to resolve at trial. (*Id.*)

On July 21 and 22, 2014, the Court held a trial on damages, in which the jury considered whether Plaintiff's unemployment between February 14, 2010 and July 22, 2014 was proximately caused by Defendant's unlawful termination of Plaintiff. As part of its defense, Defendant argued that Plaintiff's unemployment was instead proximately caused by: (1) Plaintiff's mental illness, and/or (2) his failure to reasonably attempt to find comparable work. (Doc. No. 295 at 231:24–232:5.) The jury also considered whether Plaintiff was entitled to an award of punitive damages. Although Plaintiff indicated at the final pre-trial conference that he would offer a report from Bellevue Hospital addressing his mental health condition (Doc. No. 293 at 2:13–3:15), Plaintiff rested before offering a foundational witness and before introducing the report (*id.* at 70:20–71:12). In fact, Plaintiff did not call a single witness to testify and relied exclusively on facts to which the parties had stipulated. (Doc. No. 293 at 3:14–15, 71:10–16.) Plaintiff also failed to introduce any "evidence related to the circumstances of [the alleged] retaliation." *Azkour*, 2015 WL 631377, at *10. For its part, Defendant offered three witnesses and introduced fourteen exhibits. (Doc. No. 293 at 160.)

4

On July 22, 2014, the jury reached a verdict in which it concluded that Defendant proximately caused 12 weeks of Plaintiff's unemployment and awarded Plaintiff $50,000 in punitive damages. (Doc. No. 279.) On February 12, 2015, the Court issued an opinion and order resolving the remaining post-trial issues in the case. *Azkour*, 2015 WL 631377, at *1. Among other things, the Court granted Defendant's motion for judgment as a matter of law on the issue of punitive damages. The Court reasoned that, since "no evidence related to the circumstances of the retaliation was introduced at trial *at all*," it followed, *a fortiori*, that there was no evidence introduced "from which the jury could reasonably have inferred that Defendant retaliated against Plaintiff 'with malice or with reckless indifference to [his] federally protected rights.'" *Id.* at 10 (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 548 (1999)). On February 13, 2015, the Court awarded Plaintiff damages in the amount of $20,128.32, based on the jury's finding that Plaintiff was entitled to 12 weeks of post-termination back pay plus an equivalent amount in liquidated damages. (Doc. No. 318 ("February 2015 Judgment").) On February 17, 2015, Plaintiff filed a notice of appeal of the February 2015 Judgment with the United States Court of Appeals for the Second Circuit. (Doc. No. 319.) On April 14, 2016, the Second Circuit issued a summary order affirming the Court's judgment in its entirety, *Azkour v. Little Rest Twelve, Inc.*, 645 F. App'x 98 (2d Cir. 2016), and on August 8, 2016, the Second Circuit issued its mandate (Doc. No. 348).

On August 9, 2016, the day after the Second Circuit's mandate was issued, Plaintiff filed the instant motion to vacate the February 2015 Judgment, which he initially styled as a motion under Rule 60(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 349.) In response, Defendant submitted a letter opposing that motion. (Doc. No. 350.) In the meantime, Plaintiff also filed a petition for a writ of certiorari with the United States Supreme Court, which the Supreme Court denied on October 31, 2016. 137 S. Ct. 390 (2016). On November 18, 2016,

Plaintiff filed another petition with the Supreme Court, this time seeking rehearing of the denial of certiorari, which the Supreme Court denied on January 9, 2017. 137 S. Ct. 716 (2017). On March 9, 2017 and March 17, 2017, Plaintiff filed supplementary letters in support of his motion and asked that his motion also be construed to seek relief under Rules 60(d)(1) and 60(d)(3) of the Federal Rules of Civil Procedure. (Doc. Nos. 351, 352.)

In his submissions, Plaintiff principally relies on a two-page report, dated February 26, 2016, drafted by members of the United States Marshals Service (the "USMS Report") after they interviewed Plaintiff on February 24, 2016. (Mem. 1–2.) The USMS Report included the following notation: "[Plaintiff] appeared well mannered, clean, and did not show any signs of mental health issues." (*Id.* at 2, 6.) According to Plaintiff, this notation in the USMS Report proves that Defendant's allegations at trial that Plaintiff was mentally ill were "unsubstantiated," "fraudulent[,] and malicious." (*Id.* at 1.) Relatedly, Plaintiff asserts that Defendant committed "fraud" in arguing to the jury that Plaintiff's mental illness was the cause of Plaintiff's inability to find work after he was terminated by Defendant. (Doc. No. 351 at 1.) Plaintiff also faults the jury for its apparent decision not to credit his deposition testimony in which he "repeatedly asserted that he had actively searched for a job." (Doc. No. 352 at 2.) In addition, Plaintiff insists that the Court erred when it: (1) denied his motion for summary judgment on damages; (2) admitted certain evidence at trial related to his mental illness; (3) did not admit the report from Bellevue Hospital regarding Plaintiff's mental health; and (4) instructed the jury concerning the meaning of mental disability. (*Id.* at 2; Doc. No. 351 at 1–2; Doc. No. 352 at 2–3.) Plaintiff appears to take particular issue with the Court's admission of a medical report authored by Dr. Angela Kedzior, who Plaintiff insists is "an unhinged," "disturbed[,] and incompetent physician." (Doc. No. 351 at 3 & n.4.) According to Plaintiff, Dr. Kedzior deliberately

misdiagnosed him with chronic paranoid schizophrenia as "part of her employer's scheme to conceal housing fraud." (*Id.* at 3 & n.6.)

## II. Discussion[3]

### A. Rule 60(b)

Plaintiff initially styled his vacatur motion as a motion pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure. Rule 60(b) provides that:

> the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; . . . (6) any other reason that justifies relief.[4]

Motions that are brought pursuant to Rules 60(b)(1), 60(b)(2), and 60(b)(3) – in contrast to Rule 60(b)(6) motions – must be made "no more than a year after the entry of the judgment . . . ." Fed. R. Civ. P. 60(c). This one-year limitations period is "absolute," even when the party seeking relief is *pro se*, *see, e.g.*, *Brown v. Enzyme Dev.*, 380 F. App'x 97, 98 (2d Cir. 2010) (quoting *Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000)), and the deadline is not tolled during the pendency of an appeal from the district court's judgment, *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 94 (2d Cir. 2002). In addition, "it is well-established that Rule 60(b)(6) should not be used to circumvent the one-year limitations period that applies to the specific clauses." *LinkCo, Inc. v. Akikusa*, 615 F. Supp. 2d 130, 136 (S.D.N.Y. 2009), *aff'd*, 367 F. App'x 180 (2d Cir. 2010)). Thus, as the Second Circuit has instructed, a "court may treat a motion to vacate a prior judgment as having been made under 60(b)(6) *only if the other, more*

---

[3] In light of Plaintiff's *pro se* status, the Court has construed his submissions "liberally and interpreted them 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[4] Rule 60(b)(4), which provides for relief from a judgment that is "void," and Rule 60(b)(5), which provides relief where there has been satisfaction, release, reversal, or vacatur of a prior judgment or where "applying [the judgment] prospectively is no longer equitable," are not applicable to this motion.

*specific grounds for relief encompassed by the rule are inapplicable.*" *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 55 (2d Cir. 1989). In other words, "Rule 60(b)(6) and the other clauses of Rule 60(b) are mutually exclusive: when 'the reasons offered for relief from judgment can be considered in one of the more specific clauses of Rule 60(b), such reasons will not justify relief under Rule 60(b)(6).'" *Am. Tissue, Inc. v. Arthur Andersen L.L.P.*, No. 02-cv-7751 (SAS), 2005 WL 712201, at *2 (S.D.N.Y. Mar. 28, 2005) (quoting *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391–92 (2d Cir. 2001)). In addition, "only truly 'extraordinary circumstances' will permit a party successfully to invoke [Rule 60(b)(6)] . . . ." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 873 (1988).

Here, Plaintiff brought his Rule 60 motion on August 9, 2016, which was several months more than a year after the February 2015 Judgment. While Plaintiff, in an apparent attempt to skirt the one-year bar, invokes Rule 60(b)(6) in his letters, he has failed to show that any "extraordinary circumstances" exist to justify relief under the "extremely meagre" scope of that provision. *Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, No. 07-cv-3494 (DLC), 2016 WL 6952248, at *4 (S.D.N.Y. Nov. 28, 2016) (noting that the scope of Rule 60(b)(6) is "extremely meagre" (quoting *Rinieri v. News Syndicate Co.*, 385 F.2d 818, 822 (2d Cir. 1967))); *cf. Buck v. Davis*, 137 S. Ct. 759, 778 (2017) (finding "extraordinary circumstances" standard met and granting motion under Rule 60(b)(6) to reopen habeas case where petitioner "may have been sentenced to death in part because of his race").

Instead, Plaintiff lodges a series of arguments for vacatur that are more appropriately brought under Rule 60(b)'s specific clauses. As discussed earlier, he principally moves to vacate the February 2015 Judgment based on the notation contained in the USMS Report from February 2016 – nearly two years *after* his trial – which he insists: (1) proves that "Defendant's allegations of Plaintiff's mental illness are not substantiated," and (2) warrants vacatur of the

jury's finding that Defendant was liable for only twelve weeks of Plaintiff's unemployment. (Mem. 1–2; Doc. No. 351 at 1–2.) This portion of Plaintiff's vacatur motion is, in effect, an untimely motion under Rule 60(b)(2), since Plaintiff seeks relief based on "newly discovered evidence." *See Teamsters*, 247 F.3d at 392 (instructing that a party cannot bring a Rule 60(b)(6) motion based on "newly discovered evidence," since that is a ground for relief under Rule 60(b)(2)). His Rule 60(b)(2) motion must therefore be rejected as time-barred. *See Freedom, N.Y., Inc. v. United States*, 438 F. Supp. 2d 457, 464–65 (S.D.N.Y. 2006) (denying vacatur motion based on newly discovered evidence as time-barred, even though movant was not aware of new evidence until over a year after the judgment).

In any case, Plaintiff's motion also fails under the exacting standard for Rule 60(b)(2) motions. Among other things, "the evidence" that forms the basis of the Rule 60(b)(2) motion "must be admissible and of such importance that it probably would have changed the outcome." *Teamsters*, 247 F.3d at 392 (citation omitted). An opinion regarding Plaintiff's mental health at the time of his interview with the U.S. Marshals on February 24, 2016 – nearly two years after the trial – is irrelevant to the issue presented to the jury: namely, whether Plaintiff suffered from a mental illness that prevented him from working between February 14, 2010, the day he was terminated, and July 22, 2014, the day the jury deliberated. (Doc. No. 295 at 240:24–241:5.) Accordingly, the USMS Report would not have even been admitted at trial for substantive purposes. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

In any event, as the Court noted in its February 2015 opinion, there was substantial evidence in the record for the jury to conclude that Plaintiff suffered from a "serious mental impairment" during the relevant period of unemployment. *Azkour*, 2015 WL 631377, at *3 (citation omitted). Specifically, Defendant offered, and the Court admitted, a plethora of Plaintiff's own filings in this litigation in which he admitted to suffering from mental illness.

(Doc. No. 293 at 128 (admitting exhibits consisting of Plaintiff's court filings into evidence).)  In his closing, defense counsel read from several of these exhibits (Doc. No. 295 at 195:23–210:1), including:

- Plaintiff's application for appointment of *pro bono* counsel in his related civil rights case, in which he asserted that "I am mentally disabled as corroborated by mental evaluations submitted to the Court" (No. 11-cv-5780, Doc. No. 21 at 2);

- Plaintiff's motions for appointment of a guardian *ad litem*, in which Plaintiff opined that he "suffers from mental disabilities," including "Post Traumatic Stress Disorder and Major Depression Disorder" (No. 11-cv-54780, Doc. Nos. 24 ¶ 5; 68 at 2);

- Plaintiff's June 2, 2012 declaration, in which he stated that he "live[s] in a mental health shelter" where he is "regularly treated by psychiatrists and psychotherapists" as a result of a "serious mental impairment," and asserted that his "serious mental impairment . . . constitutes another impediment in finding or maintaining any suitable employment" (Doc. No. 104 ¶¶ 26–28);

- Plaintiff's October 3, 2012 affirmation, in which he explained that "[a]ccording to [his] psychiatrist and psychotherapist, [his] serious mental impairment will last" a "long" time and that he may never "be able to recover completely . . . ." (Doc. No. 135 at 14 ¶ 30);

- Plaintiff's April 7, 2014 motion for appointment of *pro bono* counsel, in which he argued that his "severe mental illness is the special reason why appointment of counsel" was necessary (Doc. No. 192); and

- Plaintiff's April 7, 2014 declaration, in which he admitted that a nurse at his homeless shelter "diagnosed [him] with Post Traumatic Stress Disorder and Major Depressive Disorder" (Doc. No. 194 at 2).

Defendant also offered several of Plaintiff's most incoherent and threatening filings in this case as evidence. (*See* Doc. No. 293 at 128.) For instance, Defendant's Exhibit Two included Plaintiff's disturbing letter, dated January 7, 2011, in which he compared defense counsel to the Koran-burning Tennessee state legislator and stated his belief that defense counsel "should direct his clients to undergo a therapy so that they may overcome their kleptomaniac inclinations." (Doc. No. 89 at 10–11.) Furthermore, Defendant's Exhibit Seven consisted of Plaintiff's highly derogatory July 27, 2012 letter accusing his former counsel, Mr. Stein, of "taking advantage of Plaintiff's impairments to advance his own interests and the interests of his coreligionists, [D]efendant Jean-Yves Hazoui and his counsel, Andrew S. Hoffman." (Doc. No. 115 ¶ 22.)

Accordingly, given the voluminous evidence in the record of Defendant's mental illness and highly unstable behavior (Doc. No. 293 at 128), the Court has little difficulty concluding that the USMS Report, even if somehow relevant, is not of "such importance" that "it probably would have changed the outcome" of the trial. *Teamsters*, 247 F.3d at 392. Therefore, Plaintiff's Rule 60(b)(2) motion based on the USMS Report must be denied.

Next, the Court considers Plaintiff's motion for vacatur based on Defendant's alleged "misrepresentations" and fraud. According to Plaintiff, Defendant's allegations that he suffered from mental illness were "fraudulent and malicious" and had "no evidentiary support." (Mem. 1, Doc. No. 352 at 2 & n.4.) At the outset, this motion is also untimely, since it is, in fact, a motion under Rule 60(b)(3) and therefore subject to Rule 60(b)(3)'s one-year time bar. *See Satterfield v. Pfizer, Inc.*, 208 F. App'x 59, 61 (2d Cir. 2006) ("To allow [plaintiff] to challenge the . . . judgment under Rule 60(b)(6) would improperly ignore the requirement of Rule 60(b)(3) that motions based on allegations of fraud by an adversary be filed within one year of judgment.").

In addition to being untimely, Plaintiff's motion falls far short of meeting the standard applicable to Rule 60(b)(3) motions. A party is entitled to relief under Rule 60(b)(3) only if he

can point to "fraud, misrepresentation, or misconduct" by his adversary that "'prevented [him] from fully and fairly presenting [his] case.'" *Genger v. Genger*, 663 F. App'x 44, 51 (2d Cir. 2016) (quoting *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004)). As the Second Circuit has instructed, "a Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits." *Fleming v. N.Y. Univ.*, 865 F.2d 478, 484 (2d Cir. 1989). Given the voluminous evidence addressed earlier in this section, it is obvious that Defendant's arguments concerning Plaintiff's mental illness were not "fraudulent" (Mem. 1; Doc. No. 352 at 2 n.2), and Plaintiff's assertions to the contrary are frivolous. And while Plaintiff repeatedly and conclusorily accuses his adversary of "fraud" in other portions of his March 17, 2017 letter (Doc. No. 352), it is well settled that "conclusory allegations of defendant's misconduct" are insufficient on a Rule 60(b)(3) motion. *See, e.g.*, *Jordan v. Verizon Corp.*, No. 02-cv-10144 (GBD), 2007 WL 4591924, at *10 (S.D.N.Y. Dec. 27, 2007).

Plaintiff's remaining arguments regarding alleged legal errors by this Court must also be rejected. Plaintiff's argument for a new trial "to ascertain the amount of punitive damages" (Mem. 1) is, in effect, a motion for vacatur based on a legal error by the Court under Rule 60(b)(1). Specifically, Plaintiff seeks reconsideration of the Court's decision in February 2015 to grant judgment as a matter of law dismissing Plaintiff's claim for punitive damages. (Doc. No. 317 at 15–18); *see also Manney v. Intergroove Media GMBH*, No. 10-cv-4493 (SJF) (WDW), 2014 WL 1224171, at *7 (E.D.N.Y. Mar. 24, 2014) ("Since plaintiffs' arguments pertaining to . . . this Court's purported legal errors fall squarely within the ambit of Rule 60(b)(1), relief under Rule 60(b)(6) is foreclosed."). Similarly, Plaintiff's argument that the Court erred in denying summary judgment (Mem. 3), his insistence that the Court improperly instructed the jury (Doc. No. 252 at 3), and his numerous complaints regarding the Court's

evidentiary rulings at his trial – including the admission of Dr. Kedzior's report and the fact that

the Court did not admit the report from Bellevue that he never offered in the first place (*id.* at 2–

4; Doc. No. 251 at 2–4) – are not cognizable under Rule 60(b)(6) and are time-barred under Rule

60(b)(1) because they were asserted more than a year after the February 2015 Judgment.

In any event, Plaintiff's Rule 60(b)(1) motion also fails on the merits, since Plaintiff has

failed to "show 'any material issue of fact or law overlooked by the Court.'" *In re Bulk Oil*

*(USA) Inc.*, No. 93-cv-4492 (PKL), 2007 WL 1121739, at \*10 (S.D.N.Y. Apr. 11, 2007)

(quoting *Fetik v. N.Y. Law Sch.*, 97-cv-7746 (DLC), 1999 WL 459805, at \*4 (S.D.N.Y. June 29,

1999)); *see also id.* (noting that "Rule 60(b)(1) will not provide a movant an additional

opportunity to make arguments or attempt to win a point already 'carefully analyzed and

justifiably disposed'" (quoting *Matura v. United States*, 189 F.R.D. 86, 90 (S.D.N.Y. 1999)). In

fact, the Second Circuit has already considered, and rejected, several of Plaintiff's arguments,

including that the Court erred in denying summary judgment and that the evidence was

insufficient to find that he suffered from mental illness. *Azkour*, 645 F. App'x at 100–01. While

Plaintiff also appears to object to the Court's admission of evidence that undermined his

deposition testimony, the fact that certain evidence contradicts his testimony is obviously not a

proper basis for excluding that evidence. And even though Plaintiff takes issue with the fact that

the jury apparently did not credit his deposition testimony (Doc. No. 352 at 2), mere

disagreement with the jury verdict is insufficient to justify relief under Rule 60(b)(1), *see*

*ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 758 (10th Cir. 2011).[5]

---

[5] Plaintiff also "requests that the Court finalize" its previous order dated May 12, 2014, in which the Court concluded that there was a genuine dispute of fact as to whether Defendant was liable for back pay owed to Plaintiff from February 2010 to the present. (Mem. 1; Doc. No. 210.) It is entirely unclear what relief Plaintiff is seeking, since the effect of the Court's May 12, 2014 order was to defer the determination of Plaintiff's entitlement to back pay to the jury, which concluded at the July 2014 trial that Plaintiff was only entitled to back pay for the twelve weeks following his termination in February 2010.

Accordingly, since Plaintiff's motion for relief under Rule 60(b) is both untimely and lacks merit, it must therefore be rejected.

## B. Rule 60(d)

The Court next considers Plaintiff's vacatur motion under Rule 60(d)(1) and 60(d)(3). Under those provisions, a Court has authority to: "(1) entertain an independent action to relieve a party from a judgment, order, or proceeding," and "(3) set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d). Though not subject to the one-year time limitation, relief under Rule 60(d) is nonetheless "disfavored and will usually require a showing of exceptional circumstances," even when brought by a *pro se* litigant. *Morgan v. Gaind*, No. 96-cv-6336 (LAP), 2013 WL 443977, at \*1 (S.D.N.Y. Jan. 30, 2013) (citing *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008)). The Court will address Plaintiff's arguments under subsections 60(d)(1) and 60(d)(3) in turn.

### 1. Rule 60(d)(1)

Independent actions under Rule 60(d)(1) are available only if movants: "(1) show that they have no other available or adequate remedy; (2) demonstrate that [their] own fault, neglect, or carelessness did not create the situation for which they seek equitable relief; and (3) establish a recognized ground – such as fraud, accident, or mistake – for the equitable relief." *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 662 (2d Cir. 1997). In addition, Rule 60(d)(1) is appropriate only "to prevent a grave miscarriage of justice," *United States v. Beggerly*, 524 U.S. 38, 47 (1998), which "is an extremely high standard," *Wright v. Poole*, 81 F. Supp. 3d 280, 294 (S.D.N.Y. 2014). Put differently, a party must meet the "lofty requirement" of showing that it would be "*manifestly unconscionable* for his successful adversary to enforce the judgment." *Id.* (quoting *Opals on Ice Lingerie v. BodyLines, Inc.*, 425 F. Supp. 2d 286, 290 (E.D.N.Y. 2004)).

14

Plaintiff's Rule 60(d)(1) motion fails for several reasons. First, nearly all of his arguments either were made, or could have been made, before this Court and before the Second Circuit on appeal. For instance, notwithstanding the fact that the Second Circuit rebuffed Plaintiff's argument that the Court erred in denying summary judgment, *Azkour*, 645 F. App'x at 100–01, Plaintiff continues to assail that decision (Mem. 2–3). And while Plaintiff could have challenged the Court's grant of Defendant's motion for judgment as a matter of law on the issue of punitive damages on appeal, he failed to raise that issue before the Second Circuit, 645 F. App'x at 101 n.2, has therefore waived any argument that the Court should reconsider its holding at this stage of the litigation, *see Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (party may not use Rule 60 motion "as a substitute for an appeal it failed to take in a timely fashion"). In sum, Plaintiff had "available" and "adequate remed[ies]" to obtain relief with respect to nearly all of his grounds for vacatur, and he therefore fails to satisfy the Second Circuit's test under *Campaniello Imports, Ltd.*, 117 F.3d at 662.

Plaintiff nonetheless asserts that the USMS Report from February 26, 2016 could not have been discovered in time for Plaintiff to have brought a Rule 59 or a Rule 60(b) Motion. (Mem. 1–2.) But Plaintiff falls far short of showing that the existence of the two-page USMS Report "render[s] it *manifestly unconscionable*" for the judgment to be enforced. *Wright*, 81 F. Supp. 3d at 294; *cf. Scherer v. City of New York*, No. 03-cv-8445 (RWS), 2007 WL 2710100, at *5 (S.D.N.Y. Sept. 7, 2007) (noting that newly discovered evidence must be "highly convincing" and "establish a 'probability' that the outcome of [the] case would have changed" to justify vacatur (internal quotation marks omitted)). For the reasons set forth in the previous section, the USMS Report did not exist at the time of the July 2014 Trial and likely would not have even been admissible in any event. In addition, Defendant introduced voluminous evidence consisting of court filings in which Plaintiff himself admitted to suffering from a severe mental illness

during the relevant period – between 2010 and 2014. Such evidence was nothing short of overwhelming and sharply contrasted with the brief and casual observation contained in the USMS Report. Accordingly, Plaintiff's request for vacatur under Rule 60(d)(1) must be denied.

### 2. Rule 60(d)(3)

A party moving under Rule 60(d)(3) must "meet the extremely high bar of proving fraud on the Court . . . 'by clear and convincing evidence.'" *NMD Interactive, Inc. v. Chertok*, No. 11-cv-6011 (RJS), 2017 WL 993069, at *3 (S.D.N.Y. Mar. 13, 2017) (quoting *King*, 287 F.3d at 95). "'[T]he type of fraud necessary to sustain'" a motion under Rule 60(d)(3) "'is narrower in scope than that which is sufficient for relief by timely motion' under Rule 60(b)(3) for fraud on an adverse party," since "'fraud upon the court' as distinguished from fraud on an adverse party is limited to fraud which seriously affects the integrity of the normal process of adjudication." *King*, 287 F.3d at 95 (quoting *Gleason v. Jandrucko*, 860 F.2d 556, 558–59 (2d Cir. 1988)); *see also Akikusa*, 615 F. Supp. 2d at 135 (explaining that bribery of a judge, jury tampering, or retention of an attorney "for the purpose of influencing a judge are examples of fraud upon the Court," but "nondisclosure during pretrial discovery," "after-discovered evidence of alleged perjury by a witness," and the existence of "other fabricated evidence" are insufficient (citations omitted)).

None of Plaintiff's allegations in his three filings comes close to meeting this standard. As set forth in the previous section, Plaintiff primarily argues that Defendant committed fraud by arguing that he was mentally disabled. (Doc. No. 352 at 1.) For the reasons addressed at length in this Order, this argument is preposterous. Accordingly, Plaintiff's Rule 60(d)(3) motion must also be denied.

## III. CONCLUSION

Having thoroughly addressed each of Plaintiff's arguments, and having scrupulously construed Plaintiff's submissions "to raise the strongest arguments that they suggest," *Triestman*, 470 F.3d at 474, the Court DENIES Plaintiff's motion for vacatur. The Court also finds that an appeal of this Order would "lack[] an arguable basis in law or fact." *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995). Therefore, in the event Plaintiff appeals this Order, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be undertaken in good faith, and therefore, Plaintiff may not proceed *in forma pauperis*. The Clerk is respectfully directed to mail a copy of this Order to Plaintiff.

SO ORDERED.

Dated:      April 28, 2017
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/28/17

17